Pauline Grace CORP, Carl Eugene Corp, Paula Marie Corp and Sue Beth Corp, Appellants,

v.

JOPLIN CEMENT COMPANY and Phoenix Assurance Company of New York, Respondents.

No. 47588.

Supreme Court of Missouri,

En Banc.

July 11, 1960.

254 

William C. Myers, Jr., Robert P. Warden, Webb City, for appellants.

Rex Titus, Joplin (Richart & Titus, Joplin, of counsel), for respondents.

STORCKMAN, Judge.

This is a proceeding for the recovery of the maximum death benefits under the Workmen's Compensation Law. The claimants are the widow and three dependent minor children of the deceased employee. The award of the Industrial Commission denied compensation and the claimants appealed to the circuit court where the award was affirmed. The claimants' appeal from the judgment of the circuit court is before us on transfer from the Springfield Court of Appeals. Corp v. Joplin Cement Co., Mo.App., 323 S.W.2d 385.

■ At the time the employee was killed, the maximum death benefits were $12,400. Section 287.240 RSMo 1949, V.A.M.S. The notice of appeal was filed in the trial court prior to January 1, 1960. Section 477.040, as amended Laws 1959, S.B. No. 7, § 2. Since dependent children, in addition to the widow, are claimants and the amount in dispute, exclusive of costs, exceeds $7,500, the supreme court has jurisdiction of the appeal. Gennari v. Norwood Hills Corporation, Mo., 322 S.W.2d 718.

The employee Carl Corp was regularly employed by the Joplin Cement Company as an "improver's helper" or "insulator's helper". For three weeks before his death he had been working on a job in Winfield, Kansas, about 175 miles west of Joplin. His normal work week was five days, Monday through Friday. Although he was paid travel time and expenses for only one-round trip to and from the job in Winfield, he usually came home each week end at his own expense, either driving his own automobile or riding with his foreman, Clyde Hymer, Jr.

On Friday night, June 15, 1956, Corp returned to his home in Purcell, Missouri, which is located a few miles north of Joplin. On Saturday morning, a little after 9 a. m., he left home in his automobile to go to the Company plant in Joplin. The purpose of the trip was to get his pay check and also to procure some building materials to take back to the job in Winfield on the following Monday. It was not necessary for him to go to the plant to get his pay check. His employer would have mailed it to his home or he could have received it on the job if he had so elected. He also went to the home of his foreman who had not been on the Winfield job the week before, during which time William Sill had acted as foreman.

At the employer's office Corp got his pay check, and building materials, consisting of a substantial quantity of canvas and a roll of sheeting, were loaded into his automobile. On his way home, he went through Webb City where he stopped at the Glass Bar and cashed his pay check. He drank three or four 12-ounce servings of beer, talked to the owner and another patron, played the juke box and left after about 45 minutes. A short time later, while traveling alone on a direct route from Webb City to Purcell, Mr. Corp was killed in a one-car accident. The building materials belonging to his employer were found in and about his wrecked automobile. Other evidence and further details will be developed in the course of the opinion.

The final award of the Commission, with one of the three members dissenting, is as follows:

"We find from all the evidence that Carl D. Corp was a regular employee of Joplin Cement Company on and before June 16, 1956. We find from all the evidence that he sustained an accident on June 16th, 1956, while driving his own automobile, which

contained building materials (canvas and red sheathing) belonging to his employer, on a personal mission, that is, to go to his home in Purcell, Missouri, and pick up his wife.

"We further find from all the evidence that at the time of the accident he was not on a mission for his employer, nor on a 'dual purpose' trip.

"We, therefore, find and conclude from all the evidence that the accident sustained by Carl D. Corp on June 16th, 1956, which caused his death that day, did not arise out of and in the course of his employment. (DaMore vs. Encyclopedia Americana [Mo.], 290 S.W.2d 105; Garbo vs. [P. M.] Bruner Granitoid Co. [Mo.App.], 249 S.W. 2d 477, and Koder vs. Tough [Mo.App.], 247 S.W.2d 876).

"Therefore, compensation must be and same is hereby denied."

The Commission's findings of fact are meager and do not clearly show the theory upon which the Commission reached its decision, but in view of the nature of the issues and the state of the evidence in this case their sufficiency need not be determined. See Section 287.460; Scott v. Wheelock Bros., Inc., 357 Mo. 480, 209 S.W.2d 149, 152 [4]; Mershon v. Missouri Public Service Corp., 359 Mo. 257, 221 S.W.2d 165, 169 [9]; Groce v. Pyle, Mo.App., 315 S.W. 2d 482, 491 [9, 10].

Whether the death of the employee was one arising out of and in the course of his employment is the question to be determined. This in turn depends upon whether the automobile trip in which Corp was engaged was undertaken for a strictly personal reason or was combined with a necessary business purpose of the employer.

■ The Commission in its award recognized the doctrine of "dual purpose" travel as have the courts of Missouri. A much cited case expounding this doctrine is Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183, an opinion by Judge Cardozo. Briefly stated, the doctrine is that if the work of the employee creates the necessity for the travel, he is in the course of his employment, even though he at the same time is serving some purpose of his own. This general statement based on the Marks' case has been approved by this court in O'Dell v. Lost Trail Inc., 339 Mo. 1108, 100 S.W.2d 289, 293 [5], and McMain v. J. J. Connor & Sons Const. Co., 337 Mo. 40, 85 S.W.2d 43, 44. See also Brown v. Weber Implement & Auto Co., 357 Mo. 1, 206 S.W.2d 350, 354.

In the recent case of Gingell v. Walters Contracting Corporation, Mo.App., 303 S. W.2d 683, 688–689, Judge Cave, in further explaining the doctrine and applying it to permit a recovery in a similar case, stated: "Some of the decisions have construed this doctrine to be applicable only when the *primary purpose* of the trip is on the employer's business, or sometimes referred to as the 'dominant purpose' test. Judge Cardozo used *no such language.* He said it was sufficient if the business motive was a *concurrent cause* of the trip. He then defined 'concurrent cause' by saying that it meant a cause which would have occasioned the making of the trip even if the private mission had been cancelled. As we understand this formula, it is not necessary that, on failure of the personal motive, the business trip would have been taken anyway *by this particular employee at this particular time.* It is enough that some one would have had to make the trip to carry out the business mission. If the trip would ultimately have had to be made, and if the employer got this necessary item of travel accomplished by combining it with the employee's personal trip, it would be a *concurrent cause* of the trip, rather than an incidental appendage or afterthought. There is no occasion to weigh the business and personal motive to determine which is *dominant."*

■ This is a sound exposition of the doctrine and is in keeping with the rule that the Workmen's Compensation Act should be liberally construed to effectuate its purposes. Blew v. Conner, Mo., 328 S.W.2d

626; Marie v. Standard Steel Works, Mo., 319 S.W.2d 871; § 287.800.

The Commission found that Corp was a regular employee of the Cement Company at the time of the accident and that he was carrying in his automobile building materials belonging to his employer. These findings are consistent with a mission for his employer, at least with dual purpose travel. However, the Commission further found that Corp was driving his automobile "on a personal mission, that is, to go to his home in Purcell, Missouri, and pick up his wife." Mrs. Corp testified that, although nothing definite was said on the day in question, she, her husband, and the children, usually went to Joplin on Saturday afternoon, had lunch, and did their shopping. The operator of the Glass Bar testified that Corp told him that he was going home and pick up his wife and come back to Webb City and do some shopping. While the finding that Corp intended to pick up his wife and go shopping after he got home is supported by the evidence, it is not controlling or persuasive of the purpose of the trip in question; that is, the trip from his home to the company plant and the return.

The pertinent inquiry is whether employee Corp was directed by his employer to pick up the building materials and transport them to the job site in Winfield and if the carriage of the material from the company plant to his home was an integral and reasonably expected part of that transportation.

Mr. Corp, his foreman Clyde Hymer, Jr., and William Sill, were the only employees on the Winfield job who lived in the Joplin area where the company plant was located. Mr. Sill had a room in Winfield and did not usually come home on week ends. Mrs. Corp testified her husband usually came home on week ends to get supplies and to visit his family. Both Corp's wife and his foreman testified that Corp had previously carried supplies to the Winfield job in his automobile. His wife had been with him on the previous week end when he picked up building materials at his employer's plant. Before Corp left home this Saturday morning, he told his wife he was going to the company plant to get materials to take back to Winfield and to pick up his pay check.

The employer's own evidence and the testimony of its officers tend to prove Corp's authority to pick up the supplies and carry them back to Winfield in his automobile. Admissions of L. B. Meyers, general manager of the Cement Company, made in his deposition, tended to prove that Corp picked up materials on the morning in question to take back to the job in Winfield, Kansas, that the material was necessary to the completion of the job in Winfield, and that if Mr. Corp had not taken the canvas back to the job, it would have to be sent there by a company truck, by rail, or some other means. The testimony of Mr. Hymer, the foreman of the Winfield job and Mr. Corp's immediate superior, was indefinite in some respects but tended to prove that either he or William Sill, he did not remember which, instructed Corp to pick up these building materials and take them back to Winfield; that he, Mr. Hymer, had the right to hire and fire and he further said in substance, that while Corp was not "required" to pick up and haul the material, if an employee does not do what he is told, the employer would be likely to get someone that would.

William O. Mauldin, sales manager of the company and in charge of insulation work, testified that Corp was not "required" or "obligated" to take any canvas or other materials to Winfield, that the foreman on the job was charged with the responsibility of notifying him of the need of supplies and that he, Mauldin, then "took the necessary steps to get the material to the job." This sort of testimony does not mitigate against the right and duty of Corp as an employee to follow the instructions of his foreman or immediate superior on the job. Ordinarily, an employee has a right to assume that he is authorized to act in accordance with the direction or command of his foreman or other superior employee under

whom he is directly working. See 35 Am. Jur., Master and Servant, § 273, p. 698; 56 C.J.S. Master and Servant § 280, p. 1043; and Moore v. James Black Masonry & Construction Co., Mo.App., 27 S.W.2d 765, 767 [4]. All of the evidence tended to prove that Corp was directed by his foreman or immediate superior to pick up the building materials and was on his way home with them at the time of the accident.

The remaining inquiry is whether taking the building materials from the cement plant to the employee's home was a necessary part and something reasonably to be expected in connection with the transportation of the supplies to their destination in Winfield. The employer knew that its employee Corp was going to spend the week end with his family and would not return to the job in Winfield until Monday morning. The employer is also bound to have known that Corp, in carrying out the request, would not go directly from the plant to Winfield but would carry the material to his home in the course of his transporting it to Winfield. Corp had to make the trip to the company plant on Saturday because the plant would be closed on Sunday and would not reopen before he left on Monday morning to return to Winfield. This is the only reasonable inference from the evidence. In these circumstances, the trip was within the contemplation of the employer and whether the employee intended to pick up his family when he got home or merely intended to stay there and rest until time to start back to Winfield was beside the point. He intended to return to his home in any event.

The building material involved was not trifling or insignificant, but substantial and, according to the testimony, necessary for the completion of the Winfield project. If perchance his pay check had been picked up by a fellow worker or friend and delivered to his house, Corp would still have had to make the trip to the company plant. If Corp had not agreed to carry the material or had failed to do so, it would have had to be sent by some other employee or by a carrier for hire. The task assigned to Corp by his employer necessitated the trip to and from the company plant and, under the dual purpose doctrine, it is not a valid objection that the employee was concurrently serving a purpose of his own. Gingell v. Walters Contracting Co., supra; Larson, Workmen's Compensation Law, Vol. I, §§ 18.00–18.24. In the Gingell case the employee was requested by his job superintendent to pick up some tarpaulins on his way home and bring them to the job when he came to work the next day and to check the luggage of another employee at the airport. It was held that the services requested by the employer converted the trip into dual purpose travel and that injuries sustained by the employee while so engaged arose out of and in the course of his employment.

It is further contended that even if Corp had been on a dual purpose trip, he "abandoned or stepped aside from his employment" when he went to Webb City and stopped at the Glass Bar, and that his continued trip home was solely for a personal purpose. In support of this contention, the employer cites: Brown v. Anthony Mfg. Co., Mo., 311 S.W.2d 23; Kinkead v. Management & Engineering Corp., Mo. App., 103 S.W.2d 545; and Duggan v. Toombs-Fay Sash & Door Co., 228 Mo.App. 61, 66 S.W.2d 973. These cases are not controlling or persuasive in this situation. The Brown case involved the scope of the employee's duties under the employment contract. In Kinkead and Duggan, the employee had deviated from his route for a personal reason and had not returned to the place where his duty required him to be.

The employee Corp had the choice of two routes from the company plant to his home in Purcell. He chose to go through Webb City which appears to be as direct as the other. In Webb City the employee stopped at the Glass Bar where he cashed his pay check and stayed for about forty-five minutes. He then continued towards Purcell on North Main Street. At the time he was

fatally injured he was travelling on the route he had originally chosen. It has not been demonstrated that there was any spatial deviation. Spradling v. International Shoe Co., 364 Mo. 938, 270 S.W.2d 28, 32 [4].

Nor is the fact that Corp stopped at the Glass Bar and delayed his homeward journey for about forty-five minutes sufficient to constitute an abandonment of his employer's service and make the remainder of the trip strictly a personal one. Brown v. Weber Implement & Auto Co., 357 Mo. 1, 206 S.W.2d 350, 354 [3, 4]; McCoy v. Simpson, 346 Mo. 72, 139 S.W.2d 950, 952 [5]; Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S.W.2d 441, 444 [3], 100 A.L.R. 1044.

■ In a Workmen's Compensation case, the function of the reviewing court is to determine if the award of the Industrial Commission is supported by competent and substantial evidence on the whole record, but it cannot substitute its own judgment on the evidence for that of the Commission. Nevertheless, the reviewing court can decide whether the Industrial Commission could have reasonably made its findings and reached its results on a consideration of all of the evidence before it and can set aside a decision of the Industrial Commission if it is clearly contrary to the overwhelming weight of the evidence. Brown v. Anthony Manufacturing Co., Mo., 311 S.W.2d 23, 27.

■ The Industrial Commission has the right to pass upon the credibility of witnesses, but where the record reveals no conflict in the evidence or impeachment of any witness, the reviewing court may find the award was not based upon disbelief of the testimony of the witnesses. Frazier v. National Bearing Division, American Brake Shoe Co., Mo., 250 S.W.2d 1008, 1011 [3, 4]; Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 229 S.W.2d 563, 566; Scott v. Wheelock Bros., 357 Mo. 480, 209 S.W.2d 149, 153 [5]. Neither the record nor the briefs contain any charge

of incredibility or falsity and we conclude the Commission found none.

In Sanderson v. Producers Commission Ass'n, supra, the circuit court reversed an award of the Industrial Commission denying compensation and entered a judgment in claimant's favor for death benefits. On appeal this court affirmed the judgment of the circuit court stating, 229 S.W.2d 563, 567 [4]: "Now the Commission may not arbitrarily disregard and ignore competent, substantial and undisputed evidence of witnesses who are not shown by the record to have been impeached, and the Commission may not base their finding upon conjecture or their own mere personal opinion unsupported by sufficient competent evidence."

■■ Where the evidentiary facts are not disputed, the award that should be entered by the Industrial Commission becomes a question of law and the Commission's conclusions are not binding on the appellate court. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909; Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S.W.2d 918; Gantner v. Fayette Brick & Tile Co., Mo.App., 236 S.W.2d 415. The undisputed evidence compels the conclusion that the employee was on a dual purpose mission, that his work created the necessity for the travel and that the accident and fatal injury arose out of and in the course of his employment.

The award denying compensation is not supported by competent and substantial evidence on the whole record and is clearly contrary to the overwhelming weight of the evidence. Lunn v. Columbian Steel Tank Co., 364 Mo. 1241, 275 S.W.2d 298; Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 229 S.W.2d 563; Cain v. Robinson Lumber Co., Mo.App., 273 S.W. 2d 741, affirmed 365 Mo. 1238, 295 S.W.2d 388; Palm v. Southwest Missouri Wholesale Liquor Co., Mo.App., 176 S.W.2d 528; .Stepaneck v. Mark Twain Hotel, Mo.App., 104 S.W.2d 761. In the Damore, Garbo and Koder cases, cited by the Commission in its award, supra, the evidence was con-

flicting and strongly supported the award made in each case. Those decisions are not in point on the present factual situation.

The judgment of the circuit court affirming the final award of the Industrial Commission is reversed and the cause is remanded with directions to the circuit court to set aside its judgment and enter a new judgment reversing the award of the Industrial Commission and to remand the cause to the Industrial Commission for further proceedings consistent with the views expressed in this opinion.

All concur.