**Maria D. HALLOCK, Plaintiff-Appellant,**

**v.**

**TRANS WORLD AIRLINES, INCORPO-
RATED, Defendant-Respondent.**

No. 23698.

Kansas City Court of Appeals.
Missouri.

Feb. 4, 1963.

Rostov & Weintraub, Sniezek & Jones, Kansas City, Rose & Lappas, Atlanta, for appellant.

Donald G. Stubbs, McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, for respondent.

HUNTER, Judge.

In this Workmen's Compensation proceeding brought by Maria D. Hallock, appellant, the sole disputed question is who was the employer of the deceased, Thomas P. Hallock, at the time of his death on July 15, 1960. Appellant claims he was an employee of respondent, Trans World Airlines (TWA). The respondent claims he was always an employee of Ethiopian Air Lines (EAL) and had never been a TWA

employee. The referee and the Industrial Commission ruled that he was not an employee of TWA and denied compensation. On appeal, the circuit court affirmed.

On the appeal to this court the only question presented is whether the circuit court erred in affirming the Industrial Commission's final award denying compensation for the urged reason that the award is contrary to the overwhelming weight of evidence.

According to the evidence, commencing on March 7, 1956, there existed a contract between the Imperial Ethiopian Government and Trans World Airlines, Inc., the basic purpose of which was to obtain the aid of TWA in the operation and development of EAL until such time as EAL could be self-sufficient and be operated entirely by Ethiopian personnel. The contract provided that all members of the Board of Directors of EAL shall be appointed by His Imperial Majesty, and that this Board shall be the governing authority of EAL and establish its general policies. TWA was to obtain from its personnel and nominate, among others, a general manager, subject to the approval of the board. The general manager, under the direction of the board, was to be responsible for the management of the airline's operation, including authority to employ personnel for the corporation. Article VI provided that "when requested by EAL, TWA shall act *as agent of EAL* and the Imperial Ethiopian Government *in the employment of personnel* and the purchase of equipment, supplies and services." (Italics ours.) All expenses incurred by TWA were to be reimbursed to TWA with a 5% commission, and in addition TWA was to receive an annual fixed fee of $35,000. Payment to TWA was to include expenses incurred by TWA in returning to their place of original domicile persons who changed their domicile to accept employment by EAL pursuant to the agreement.

Pursuant to this contract TWA was requested to obtain for EAL a number of qualified pilots. TWA ran in various newspapers throughout the country an advertisement reading "Pilots—Overseas With Ethiopian Air Lines" with TWA's address.

Early in 1956 Thomas P. Hallock was honorably discharged from the United States Coast Guard as an aviator with the rank of Commander, and he was seeking employment. He saw the mentioned advertisement and contacted the TWA personnel office where he was directed to Clyde E. McBride, Jr., TWA employment supervisor. A form was filled out titled: "Ethiopian Air Lines Applicant Check List—Position Applied For: EAL Co P." Also filled out was a form headed "Trans World Airlines, Inc., Application for Employment, Position Co-Pilot Ethiopian Airlines, Inc."

McBride testified that while in connection with the Ethiopian Air Lines' contract some regular TWA employees were transferred on occasion by TWA to Ethiopian Air Lines, Hallock was hired directly for the Ethiopian Air Lines and from outside TWA. McBride explained in detail to Hallock that Hallock was working for Ethiopian Air Lines. He gave Hallock a copy of the written contract Hallock would be expected to sign on his arrival in Ethiopia and he had Hallock sign a letter of commitment that on arrival Hallock would sign such a contract. The letter read in part:

"Ethiopian Air Lines, Inc.
"POB 1755
"Addis Ababa, Ethiopia

"Dear Sirs:

"I have made application to TRANS WORLD AIRLINES (TWA) as *your employment representatives* in the United States *for employment with Ethiopian Air Lines (EAL)* . . ..
"TWA has invited me to examine the Agreement of Employment which I will sign on my arrival in Addis Ababa.
* * *

"I understand and acknowledge that should I willfully terminate my *employment with EAL* prior to having completed 18 months of service, that the airlines (EAL) shall hold me obligated for all or a portion of my transportation from the United States to Ethiopia." (Emphasis ours.)

Hallock then received a letter from P. Paul Day, Employment Manager, which read in part: "Dear Mr. Hallock: This letter will supplement the instructions already given you and will confirm our verbal understanding regarding your employment by the Ethiopian Air Lines at Addis Ababa, Ethiopia, to function as a Copilot. * * * EAL will pay you your regular salary . . . while traveling to Ethiopia."

On his arrival in Ethiopia Hallock executed his written employment contract which reads: "Ethiopian Air Lines, Inc., Addis Ababa, Ethiopia, Agreement of Employment between Ethiopian Air Lines, Inc., hereinafter designated as EMPLOYER, and Thomas P. Hallock, hereinafter designated as EMPLOYEE." Hallock executed this contract of employment with Ethiopian Air Lines, Inc., which established his rate of pay and his duties as "a captain, to perform duties in Ethiopia and other countries." The signatory portion read:

"Ethiopian Air Lines, Inc., (Employer).
by: (Signed but not legible on exhibit copy)
Thomas P. Hallock
Employee"

Later, and on January 1, 1958, a supplementary "Agreement of Employment between Ethiopian Air Lines, Inc., hereinafter called the Employer and Thomas P. Hallock, hereinafter called the Employee" was executed by Hallock and by Ethiopian Air Lines, Inc. Four additional schedules, A, B, C and D were executed and added to the contract in each of which Ethiopian Air Lines, Inc., was named as employer and Hallock as its employee. Schedule D provided that EAL would provide Hallock with a life and accident policy in the sum of $10,000 in addition to paying his salary.

The evidence further discloses that in pursuance of the contract of employment between TWA and the Ethiopian government and to induce qualified persons in this country to accept the employment offered by EAL it was provided that up to 80% of the wages of persons hired for EAL would be disbursed by TWA check drawn on funds in this country, and deposited in the bank account designated by the employee, the remainder of the salary being payable in local currency in Ethiopia. All funds disbursed in this manner by TWA were to be billed monthly to EAL and TWA was to be reimbursed by EAL in full together with a 5% commission for this service.

TWA permitted pilots hired for EAL at their option to purchase shares in the TWA Credit Union and to provide for a payroll deduction for the purchase of U. S. Government Bonds. Hallock availed himself of both of these privileges. However, persons hired for EAL were not permitted to come under the TWA retirement program, nor did they acquire any seniority rights. TWA did deduct for social security on all persons for whom they processed payrolls, including Hallock.

On August 15, 1958, Hallock married appellant, a Greek National and hostess for EAL in Addis Ababa, Ethiopia and undertook to obtain United States citizenship for her. He applied for immediate citizenship under that portion of the Immigration and Naturalization Act, Section 319(b) permitting citizenship to any person whose spouse is a citizen of the United States in the employment of an American firm engaged in the development of foreign trade. He prepared a letter for TWA to type on its letterhead reading in part, "This is to certify that Mr. Thomas P. Hallock is a Trans World Airlines' employee on assignment,

under contract to Ethiopian Airlines . . .." and this letter was signed and sworn to by a regional director of Industrial Relations of TWA. Also, the Director of Personnel Administration at Hallock's request wrote the U. S. Department of Justice, Immigration and Naturalization service, saying it was written "at the request of one of our employees, Captain Thomas P. Hallock" and stating Hallock was an employee of an American Company serving overseas, being "assigned to fly for Ethiopian Air Lines . . .." Mrs. Hallock was granted United States citizenship.

On July 15, 1960, Hallock was killed while piloting an aircraft in Ethiopia. TWA, on August 5, 1960, pursuant to Section 287.240(6) RSMo 1959, V.A.M.S., provided notice of his death to the Workmen's Compensation Commission which notice it later asked to be withdrawn. TWA arranged transportation of Hallock's body to the United States at its own expense. TWA passes were issued to Hallock's widow for her to travel to and within this country.

■ Mrs. Hallock filed her Workmen's Compensation claim June 6, 1961. She remarried on November 2, 1961. It has been stipulated that there is a period of 68 weeks in which she would be eligible for compensation, if she met the provisions of the compensation act in all other regards, and that she is entitled to $2,720 as full recovery, or to nothing. Since the amount in dispute is less than $15,000 this court has appellate jurisdiction.

On this appeal, appellant does not take the position that there is no substantial evidence to support the Industrial Commission's award denying recovery. Rather, appellant contends the Industrial Commission's decision is clearly contrary to the overwhelming weight of the evidence.

■ It is the rule that the reviewing court although not permitted to substitute its own judgment on the evidence for that of the commission may nevertheless decide whether the Industrial Commission could have reasonably made its findings and reached its results on a consideration of all the evidence before it, and can and should set aside a decision of the Industrial Commission if it is clearly contrary to the overwhelming weight of the evidence. Corp v. Joplin Cement Company, Mo.Sup., En Banc, 337 S.W.2d 252; Lawson v. Vendo Company, Mo.App., 353 S.W.2d 113.

■ While we have not set out all of the evidence pro and con on the employment question, we have set out the most important of it and in sufficient detail to demonstrate the validity of our conclusion drawn from the entire record that the decision of the Industrial Commission is not clearly contrary to the overwhelming weight of the evidence. Although there is some evidence which appears to support appellant's contention that TWA was deceased's employer rather than EAL, it is our view that the evidence, taken as a whole, fully supports the decision of the Industrial Commission.

It is amply clear that under the terms of TWA's contract with the Empire of Ethiopia, TWA agreed to hire on behalf of EAL certain personnel including pilots. The contract specifically provided TWA would act as the agent for EAL in locating and hiring such persons. The contract between deceased and EAL and the surrounding transactions unmistakeably reveal that deceased was hired by Ethiopian Air Lines, Inc., through its fully disclosed agent, TWA. While perhaps some TWA personnel went too far in what they said and wrote in an effort to aid deceased obtain United States citizenship for his wife and were perhaps technically incorrect in withholding for social security from his salary, (all of which salary in final analysis was paid by Ethiopian Air Lines, Inc.) we believe that the decision of the Industrial Commission was not only not contrary to the overwhelming weight of the evidence but rather was in accord with it.

**640**

■ Appellant has cited De Lonjay v. Hartford Accident & Indemnity Company, 225 Mo.App. 35, 35 S.W.2d 911, and Section 287.040(4) suggesting there may have been a contractor-subcontractor relationship between TWA and EAL which would make the primary contractor liable to the employee for his injuries. We cannot find where any such contention was raised by appellant prior to this appeal. Nor under the facts presented is the contention applicable, for, among other reasons apparent upon examination of the statute, deceased was not an employee of a subcontractor of TWA.

Accordingly, the judgment is affirmed.

All concur.