James B. GORDON,

v.

**PURITAN CHEMICAL COMPANY and Employers Mutual Liability Insurance Company.**

No. 8456.

Springfield Court of Appeals.

Missouri.

Sept. 2, 1966.

Rehearing Denied Sept. 26, 1966.

Edward C. Friedewald, Robert R. Schwarz, Luke, Cunliff, Wilson, Herr & Chavaux, St. Louis, for appellants.

Benjamin B. Tepper, Clayton, for respondent.

HOGAN, Judge.

This appeal is taken from an order of the Circuit Court of Dunklin County affirming an award of compensation made to the respondent, James B. Gordon, under the provisions of the Workmen's Compensation Law, Chapter 287, RSMo (1959), V.A.M.S. The Division of Workmen's Compensation denied the respondent's claim in the first instance, but on review the Industrial Commission reversed the Division's finding and entered an award in favor of the claimant. The circuit court affirmed the award and this appeal followed. The broad question before us is whether the accident in which the respondent was injured "[arose] out of and in the course of his employment," within the meaning of Section 287.120, par. 1, RSMo (1959), V.A.M.S.

The claimant is a traveling salesman. At the time in question, he was employed in the St. Louis office of the Puritan Chemical Company. Mr. Gordon's assigned territory included St. Louis and parts of Missouri, Illinois and Kentucky. No part of Arkansas was in his territory, but because Mr. Gordon's wife had relatives in Hot Springs, Arkansas, and he occasionally went there, the claimant had his company's permission to solicit orders in Hot Springs. As the sales manager put it, "we thought he could sell a few people while he was there."

In December 1962, while on vacation in Hot Springs, Mr. Gordon obtained an order from a Mr. Louis Cohen. Mr. Cohen purchased twelve gallons of cleaning materials, for which he was charged $45.10, plus an additional $6.01 for use tax and shipping charges. The claimant's commission was $10.80. This was the only sale Mr. Gordon made in Arkansas. The claimant testified that if he had been called upon to "make the account good," without returning any merchandise, it would have cost him about $27.00.

Mr. Cohen did not pay for the cleaning materials. Mr. Gordon's attention was called to Mr. Cohen's delinquency on several occasions, and on June 8, 1963, at a sales meeting in St. Louis, claimant was instructed to call Mr. Cohen to see if the account could be collected. As Mr. Gordon's sales manager put it, claimant was told "to see what he could do to get this thing taken care of."

On Wednesday, June 12, Mr. Gordon left St. Louis to work in his territory in southeast Missouri. He left St. Louis early in the morning, arrived in Kennett, Missouri, about 11:00 A.M., and made two calls in Kennett. "Somewhere around 12:30, 1:00 o'clock," Mr. Gordon decided to go to Hot Springs. Kennett is 198 miles from St. Louis; Hot Springs is 248 miles from Ken-

nett. Arriving in Hot Springs about 4:30 P.M., the respondent contacted Mr. Cohen. Mr. Cohen advised the claimant that "he didn't want the merchandise, and * * * felt eventually [claimant] would get back and pick it up." Mr. Gordon put the two cartons of cleaning materials in his car, and went to his mother-in-law's store nearby. He assisted his mother-in-law in closing her store, picked up his brother-in-law and sister-in-law, and they all had dinner at a local restaurant. Claimant visited with his wife's relatives until about 8:30 P.M., then left Hot Springs to return to Kennett. On the return trip, he was injured in an automobile accident. Other facts and details will be noticed in the course of the opinion.

The Referee's finding, so far as it is material, was that:

"I find from the evidence that employee's accident of June 12, 1963, did not arise out of or in the course of his employment with Puritan Chemical Company."

The Industrial Commission's finding, again so far as it is material, was:

"We find from all of the evidence that the employee, James B. Gordon, sustained an accident on June 12, 1963, arising out of and in the course of his employment with the Puritan Chemical Company. Corp v. Joplin Cement Co., [Mo.,] 337 S.W.2d 252."

■ Needless to say, both these findings might well have been amplified, at least sufficiently to show how the controlling issues were decided, Michler v. Krey Packing Co., 363 Mo. 707, 718–719, 253 S.W.2d 136, 142–143 [8]; Dixon v. Art Bunker Motors, Inc., Mo.App., 387 S.W.2d 199, 204–205 [4]; Anno., 146 A.L.R. 123, 165–170, Sec. VI c (2) (1943), but perhaps they are sufficient to constitute an implied finding of the necessary ultimate facts, State ex rel. Probst v. Haid, 333 Mo. 390, 398, 62 S.W.2d 869, 872–873 [3, 4], and in any event the essential and determinative issue is whether the claimant's work created the necessity for

his trip from Kennett to Hot Springs, even though he was serving some purpose of his own at the same time. If so, he was within the doctrine of dual purpose travel, his accident arose out of and in the course of his employment, and his injury was compensable. Corp v. Joplin Cement Co., supra, 337 S.W.2d 252, 255 [2]; Barton v. Western Fireproofing Co., Mo.App., 326 S.W.2d 344, 347–348 [2]; Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183 [2].

In support of their respective positions, the parties have briefed and argued several points dealing with appellate review in Workmen's Compensation cases. The claimant insists that the Commission's award involves the resolution of a question of fact, and reminds us that we are not authorized to substitute our judgment on the evidence for that of the Industrial Commission. The premise of this argument is that since Mr. Gordon made a statement (recorded and transcribed) on June 21, 1963, in which he represented that he had been injured after making a call on a customer at Senath, Missouri, and later retracted that statement, the Commission's decision necessarily involves a choice between conflicting factual statements. The claimant compares this case to Lashbrook v. Clipper Manufacturing Co., Mo.App., 377 S.W.2d 785, and other cases in which the employer and insurer have resisted a claim by introducing a claimant's prior inconsistent statement as an admission against interest. The appellants, on the other hand, contend that the determinative facts are largely undisputed, and strongly maintain that the Commission's decision represents its conclusion that the claimant's trip to Hot Springs was a dual purpose trip, and therefore is to be reviewed as a conclusion of law.

■ In our view, these arguments simply over-complicate the case. It is elementary that for purposes of review, administrative decisions, including Workmen's Compensation cases, are often categorized as "conclusions of law" or "conclusions of fact." The significance of the

distinction is generally said to be that questions of law are matters for the independent judgment of the reviewing court, while questions of fact are reviewable only to the extent of determining that the administrative decision is supported by substantial evidence and is not unreasonable. 2 Am. Jur.2d Administrative Law, Section 618, pp. 461–462. So, in our own cases, it is held that when the finding in a Workmen's Compensation case is one of fact, we are only authorized to determine whether the Industrial Commission could reasonably have made its findings, and reached its result, upon consideration of all the evidence before it, and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Corp v. Joplin Cement Co., supra, 337 S.W.2d at 258 [5]; Brown v. Weber Implement & Auto Co., 357 Mo. 1, 5–6, 206 S.W.2d 350, 352 [1, 2]. On the other hand, awards of the Industrial Commission which are clearly reached by interpretation or application of the law, as distinguished from a determination of the facts, fall within our usual province of review and correction. Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292, 296–297 [6] [7]; Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, 65–66 [3–5].

■ Doubtless the classification of administrative decisions as being conclusions of law or conclusions of fact is historically sound and judicially useful, but it has also been recognized that the two terms are not amenable to precise definition, and that administrative decisions ordinarily involve both such kinds of determination.[1] For several reasons, this case does not lend itself to realistic characterization in terms of the law-fact distinction. For one thing, the Commission's finding, if it is sufficient, is a wholly implied finding of the necessary constitutive facts, and one could not confidently say by what steps the Commission reached its conclusion. For another,

at least in our view of the case, the merits require determination of the essentially factual question whether the claimant had a personal motive in going to Hot Springs when he did, and the essentially legal question whether, given the personal reason for going, the claimant's journey was a dual purpose trip. We do not regard it as necessary to a disposition of the merits to classify the award as a conclusion of law or a conclusion of fact, or to use the relatively meaningless term "mixed·question of law and fact," and we decline to do so.

■ The claimant maintains—at least as we follow him—that the record supports an implied finding that Mr. Gordon had no personal reason to go to Hot Springs; he claims that the record evidence, and the reasonable inferences to be drawn therefrom, conclusively show that he was on his employer's business, at his employer's direction. To determine whether such finding could reasonably be made on the whole record, we will examine the evidence bearing on the nature and purpose of the claimant's trip, taking into consideration, among other things, the Referee's finding to the contrary and the consistency and inherent probability of the testimony. Michler v. Krey Packing Co., supra, 363 Mo. at 716–717, 253 S.W.2d at 140–141.

Mr. Gordon was employed to make sales in St. Louis, part of outstate Missouri, part of Illinois, and part of Kentucky. He had permission to make sales in Hot Springs when he was there, because he occasionally visited his wife's relatives in Hot Springs. The claimant traveled nine routes through his territory, and Kennett, Missouri, was as close as he came to Hot Springs. Hot Springs, Arkansas, is 248 miles from Kennett, as noted.

During the unspecified time that he had had company permission to make sales in

---

1. John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 527, 66 S.Ct. 299, 90 L.Ed. 278, 282, n. 3; Bingham's Trust v. Commissioner of Internal Revenue, 325 U.S. 365, 378, 65 S.Ct. 1232, 89 L.Ed. 1670, 1679; 2 Am.Jur.2d Administrative Law, § 669, pp. 537–538.

Hot Springs, Mr. Gordon had made one sale. It was several months delinquent when he took the trip in question. The total charge to Mr. Gordon, had the matter been left undone, would have been about $27.00. The claimant had been told by his employer "to see what he could get done to get this thing taken care of." As the sales manager, Mr. Shifrin, stated, "Mr. Gordon was instructed to call Mr. Cohen and get something done about it." Mr. Gordon had tried to call Mr. Cohen on two occasions, but had been unsuccessful. He had not written Mr. Cohen. On the day in question, the claimant had driven from St. Louis to Kennett, a distance of 198 miles. He arrived in Kennett about 11:00 A.M., and while in Kennett he made two stops. There were "four or five other prospective accounts that had bought in the past but hadn't bought recently," but Mr. Gordon did not call on them. He ate lunch, and about 12:30 P.M. decided to go to Hot Springs and return, a distance of 496 miles, before calling on other customers.

When Mr. Gordon arrived in Hot Springs, he called on Mr. Cohen, who returned the two cartons of merchandise. Mr. Cohen had been holding the cleaning material, because he thought the claimant would eventually "get back and pick it up." Mr. Gordon spent about forty to forty-five minutes with Mr. Cohen, then contacted his relatives. He then spent about three hours visiting with his mother-in-law, his brother-in-law and sister-in-law.

At the time the trip was made, Mr. Gordon was apparently having some marital difficulties. In giving his second statement to the insurer's representative, in which, he testified, he gave "all the correct details," the claimant stated, "Well, I have problems at home with my wife. I felt that had she known I had been down to Hot Springs, she would have been quite upset and I felt that may be a white lie—if this report got back to her—would not hurt the situation as I was working in my territory." At another point in the same statement, he said he had told Mr. Fry, the vice president in charge of

sales, the same story (that he was injured while calling on a customer at Senath) "* * * because I did not want to get this thing involved about Hot Springs with my wife, as Mr. Fry and my wife and I are fairly close, and I didn't want it coming back to my wife * * *." At the Referee's hearing, claimant gave the reason for his first, misleading statement as being, "I didn't wish to tell my wife I had been down to Hot Springs. This was her home. I felt she would be rather upset if I had been down there without her, because of marital problems, traveling that far, I didn't feel I wanted the family along." Mr. Gordon also testified that he did not go to Hot Springs to see his mother-in-law, and being asked if the real reason for his trip was not that his wife wanted a divorce, he answered, "Never." Again being asked to recall what he had said in his previous statements, Mr. Gordon answered, "I believe I made the statement that I had enough financial problems, or enough problems, I don't want one more thing to give her an idea for a divorce. I didn't say it would cause a divorce. It is a figure of speech."

 Giving effect to the Referee's finding as a factor, and considering the consistency and inherent probability of the testimony, it could not reasonably be concluded that Mr. Gordon went to Hot Springs solely upon his employer's business. This case is not parallel to the cases which the claimant has cited. Of course, the finder or trier of fact could consider the first, false statement as being an admission against interest insofar as it was inconsistent with the later testimony, and could consider it merely as impeaching the claimant's credibility, cf. Johnson v. Simpson Oil Co., Mo.App., 394 S.W.2d 91, 96–97 [10]; 2 Larson, Workmen's Compensation Law, Section 79.42, pp. 298–299, but the inconsistencies between the two accounts do not bear on the nature and purpose of the trip. The evidence tending to establish that Mr. Gordon had no personal motive to go to Hot Springs comes from him alone, and it is self-conflicting, inconsistent and inher-

ently improbable. When he was asked if the reason for his trip to Hot Springs was to see his mother-in-law, Mr. Gordon answered, "No, not at all," but he also testified that: He made the trip without finishing his business at Kennett; he undertook the round trip of 496 miles, after having traveled 195 miles earlier the same day, to collect an account which involved no more than $27.00 penalty to him, had it been left uncollected; he had serious marital difficulties of some sort at the time, at least serious enough to cause him to try to conceal the trip from his wife; and his business in Hot Springs took only about forty to forty-five minutes, while his visit with his wife's family took about three hours. Mr. Gordon's testimony is not aided by his only other non-medical witness, who said that the claimant was instructed to *call* Mr. Cohen. In our judgment, the claimant's testimony, so far as it is evidence that he had no personal motive to make the trip to Hot Springs, falls within the principle that the self-contradictory testimony of a single witness, unexplained by other circumstances, does not constitute substantial evidence. Welborn v. Southern Equipment Co., Mo., 395 S.W.2d 119, 125–126 [6].

◼ Given Mr. Gordon's personal reason for going to Hot Springs, the further question is whether the evidence permits the inference that his trip would have been made even though his private errand had been cancelled. Daniels v. Krey Packing Co., Mo., 346 S.W.2d 78, 84 [8]; Mc-Main v. J. J. Connor & Sons Const. Co., 337 Mo. 40, 85 S.W.2d 43; Heaton v. Ferrell, Mo.App., 325 S.W.2d 800, 806. To reiterate the general test of compensability applicable to the facts at hand, it is: "If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating

the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk." [2] Of course, as the claimant points out, the doctrine of dual purpose travel does not require the business purpose to be the primary or dominant motive for the trip; it simply requires that the service of the employer be a concurrent cause of the journey. Corp v. Joplin Cement Co., supra, 337 S.W.2d at 255; Gingell v. Walters Contracting Corp., Mo.App., 303 S.W.2d 683, 688–689 [3] [4]; Barragar v. Industrial Commission of Wisconsin, 205 Wis. 550, 238 N.W. 368, 371 [9], 78 A.L.R. 679, 683. All the same, the business errand must be of sufficient importance to justify the making of a trip by someone, Gingell v. Walters Contracting Corp., supra, 303 S.W. 2d at 689 [4]; 1 Larson, Workmen's Compensation Law, Section 18.13, p. 294.11, and it is recognized that sometimes the relative insignificance of the business mission is the surest indication that it did not in itself motivate the trip. 1 Larson, op. cit., Section 18.14, pp. 294.12–294.14. The determinative factor here is whether the business errand was of such nature and importance that a trip by someone would have been necessary if the claimant had been unable or unwilling to attend to it by combining business with his personal objective. Gingell v. Walters Contracting Corp., supra, 303 S.W.2d at 689 [4]; 1 Larson, op. cit., Section 18.14, p. 29.14. See also Hancock v. Industrial Commission of Arizona, 82 Ariz. 107, 309 P.2d 242, 243–244 [3]; Barragar v. Industrial Commission of Wisconsin, supra, 238 N.W. at 370–371 [5–8], 78 A.L.R. at 682–683.

◼ In this case, as we have said, the overwhelming weight of the evidence is that the claimant had a compelling personal reason for going to Hot Springs. Indeed, a

2. The language is Judge Cardozo's, in Marks' Dependents v. Gray, supra, 167 N.E. at 183 [2]. It has many times been quoted with approval by our courts. See Heaton v. Ferrell, supra, 325 S.W.2d at 806, and cases cited n. 11.

careful reading of the entire record convinces us that it was a wholly personal trip, and that the service of the employer was not a concurrent cause of the travel. Manifestly, the employer's business was not such as would either require or justify a special trip of 496 miles. Mr. Cohen's entire order consisted of two cartons of merchandise, and the cost of the materials, so far as the employer was concerned, was about $23.50. This was the only item of business, so far as the record discloses, the employer had in Hot Springs. We think it would be wholly unreasonable to construe the employer's direction to call Mr. Cohen, and to "get something done" about his account, as a direction to travel to Hot Springs from Kennett. There is no basis for saying that the trip was a dual purpose trip, and we conclude the injury was not compensable.

For the reasons indicated, the judgment affirming the award is reversed.

STONE, P. J., concurs.

TITUS, J., not participating because not a member of the court when the cause was submitted.