**William R. COPELAND, Appellant**

v.

**THURMAN STOUT, INC., d/b/a Ram Tech, and Wausau Insurance Companies, Respondents.**

No. 27466.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 7, 2006.

William W. Francis, Jr., Ryan E. Murphy, Placzek & Francis, Springfield, for appellant.

Kevin M. Johnson, Wallace, Saunders, Austin, Brown & Enochs, Springfield, for respondents.

THEODORE B. SCOTT, Senior Judge.

This is an appeal from a decision of the Labor and Industrial Relations Commission. Appellant was injured August 13, 1997 in an automobile accident while employed by Ram Tech. Appellant claims the Commission erred in denying him permanent and total disability arising from physical and psychological injuries as a result of this accident. He was awarded compensation for physical injuries, but his request for compensation for psychological injuries was denied. He believes the Commission disregarded testimony which was uncontroverted and which supported his theory of a psychological disability. He concludes this was error because the Commission is only free to ignore evidence when it finds the evidence to be unbelievable or not credible. He further claims the Commission erred in failing to award double damages and compensation for treatment. We conclude the record contains sufficient competent and substantial evidence to support the decision and award by the Commission.

Review of a workers' compensation case is governed by Mo. Const. art. V, § 18 and § 287.495, RSMo 2000. Section 287.495 provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

■ The Missouri Supreme Court held that the reviewing court "must examine the whole record to determine if it contains sufficient competent and ·substantial evidence to support the award". *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc.2003). To determine if the award is supported by competent and substantial evidence, a reviewing court must examine all of the evidence in the context of the whole record. *Id.* at 223. "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." Id.

■ In conducting a review, the court will review the findings of the Commission. *Clark v. FAG Bearings Corp.*, 134 S.W.3d 730, 734 (Mo.App.2004). If the Commission incorporates the Administrative Law Judge's opinion and decision, the reviewing court will consider the Commission's decisions as including those of the Administrative Law Judge. Id.

In April 1998, Mr. Copeland applied for unemployment compensation benefits as a result of his August 13, 1997, automobile accident while employed by Ram Tech. In 1968, he was involved in a motorcycle crash. He was involved in another accident in February 1995, when an L-shaped angle iron fell on him. On November 6, 1998, Mr. Copeland was involved in a four-car motor vehicle accident.

A review of his medical journey helps to explain the medical treatments and varying opinions as to a diagnosis of the extent of his injuries and any opinions of a causative relationship back to the 1997 accident. In April 1998, Dr. Williams found lumbosacral dysfunction and concluded appellant was a surgical candidate. Dr. Michael Perry agreed appellant might benefit from surgery. These findings and records were sent to Dr. Alfred Bonati for a surgical evaluation, and Dr. Bonati agreed appellant was a surgical candidate and expressed a willingness to perform the surgery but was waiting clearance from the workers' compensation carrier. This surgery did not occur.

On October 15, 1999, a hearing was conducted by an Administrative Law Judge ("ALJ") pursuant to appellant's Application for a Temporary or Partial Award. The ALJ determined that at that time appellant had not reached maximum medical improvement. In accordance with that finding, the ALJ ordered Ram Tech and its insurer to "provide surgery through Dr. Patricia Williams, the Zini [sic] Institute, or a comparable health care provider." The ALJ also ordered Ram Tech and its insurer to pay to appellant temporary total disability benefits effective from August 13, 1997, until such time as he reached maximum medical improvement.

In April 2000, Dr. Williams referred appellant to Dr. Anthony McBride, an orthopedic surgeon. Dr. McBride reviewed the various medical records, performed an examination, and ordered a repeat MRI study. Based upon these findings, Dr. McBride determined that appellant was not a surgical candidate

In August 2000, appellant went to see Dr. James Moneypenny, a psychologist, for an examination and evaluation. He

diagnosed appellant with mood disorder and distress stemming from back pain. He believed that the chronic pain and depression rendered appellant fully disabled. Dr. Moneypenny did not causally relate his diagnosis and the psychological symptoms to a specific accident; rather, he stated it was more appropriate for a medical doctor to determine the cause of the chronic back pain than a psychologist.

In October 2000, appellant went to Dr. Norbert Belz, an occupational medicine specialist, for an examination. Dr. Belz opined that the motor vehicle accident on August 13, 1997, caused an aggravation of the underlying degenerative joint disease and degenerative disc disease of the lumbar sacral spine. He also opined that this accident, and the loss of physical activity associated with it, had led to reactive depression in appellant. Based upon these findings, Dr. Belz determined that because of the August 13, 1997, accident, appellant sustained a permanent partial disability of 25% to the body as a whole, relative to the low back, and a permanent partial disability of 10% to the body as a whole, relative to the reactive depression. Dr. Belz also opined that maximum medical improvement had been reached, but because of these injuries appellant was in need of future medical care and was governed by work restrictions.

Dr. Belz also discussed the accidents that took place both prior to and subsequent to August 13, 1997. He opined that the 1968 injury left appellant experiencing ongoing daily pain and, as a result, had caused him to sustain a permanent partial disability of 15% to the left knee. He further opined the February 1995 injury resulted in a 5% permanent partial disability to the body as a whole referable to the cervical spine. He concluded appellant had not reached maximum medical improvement in regards to the motor vehicle accident in November 1998 and should continue to get ongoing treatment.

In December 2000, appellant saw Dr. John Ferguson, a neurosurgeon, for an examination and evaluation. Dr. Ferguson once again diagnosed appellant with acute and chronic lumbosacral strain and opined that appellant was not a surgical candidate but rather should be provided with conservative medical care.

In February 2001, appellant began going to St. John's Regional Health Center under the care of Dr. Benjamin Lampert. Dr. Lambert recommended an outpatient pain management program which included epidural injections, physical therapy, and psychotherapy.

In September 2001, Dr. Lampert referred appellant to Dr. Fred McQueary, an orthopedic surgeon. Dr. McQueary reviewed the medical records and performed an examination. Appellant informed the doctor that he had not had any problems with his back until the accident on August 13, 1997. Dr. McQueary recommended a new MRI. This MRI resulted in similar findings as before (disc desiccation at L4–L5 and L5–S1, and moderate bulging at L4–L5). Dr. McQueary also ordered a discography in order to determine whether appellant was a candidate for a lumbar fusion surgery. After this discography took place, Dr. McQueary rejected the idea of surgery and opined that the only potential management was long-term conservative treatment. Dr. McQueary further opined that appellant had reached maximum medical improvement and had a permanent partial disability of 25% to the body as a whole. However, in his deposition Dr. McQueary stated that he now considered appellant to be totally disabled.

In October 2001, appellant went to see Dr. Randall Cross, whose specialty is occupational medicine. Dr. Cross opined that the accident on August 13, 1997, exacer-

bated a preexisting lumbar disc disease and lumbar osteoarthritic disease and resulted in a permanent partial disability of 8% to the body as a whole.

In December 2002, appellant went to see Dr. David Volarich, whose specialty is occupational medicine. Dr. Volarich took a patient history, reviewed the medical records, and performed a physical examination of appellant. Dr. Volarich opined that because of the August 13, 1997, accident, appellant sustained an injury to his low back in the nature of a bulging or protruding disc at levels L4–L5 and L5–S1, and an aggravation of degenerative joint and disc disease referable to the low back. He stated that as a consequence of this accident, appellant sustained a 30% permanent partial disability to the body as a whole referable to the low back.

Dr. Volarich also discussed the accidents that took place both prior to and subsequent to August 13, 1997, that left appellant with permanent industrial disabilities to his left lower extremity resulting is a permanent partial disability of 15% referable to the left lower extremity at the knee, and to his cervical spine resulting in a permanent partial disability of 10% to the body as a whole referable to the cervical spine. He concluded appellant had suffered additional injury to his cervical spine from the motor vehicle accident in November 1998 resulting in a permanent partial disability of 20% to the body as a whole referable to cervical spine. Dr. Volarich noted that some additional disability existed due to depression but deferred to psychiatric evaluation for that assessment.

In January 2003, appellant went to see Dr. Dale Halfaker for a psychological examination and evaluation. Dr. Halfaker opined that as a consequence of the August 13, 1997, accident, appellant suffered from mild to moderate psychological impairment and presented with psychological and environmental problems. He conclud-

ed appellant had reached maximum psychological improvement but would benefit from 12–15 sessions of pain management psychotherapeutic intervention to improve the quality of life. He opined as a result of the August 13, 1997, accident, appellant had sustained a permanent partial impairment of 20–25% to body as a whole.

In September 2003, appellant went to see Dr. James Stefanowicz, the last doctor in this extensive journey through the medical profession, for a psychological examination and evaluation. Dr. Stefanowicz opined that appellant suffered from major depressive disorder. Dr. Stefanowicz concluded that onset of this major depressive disorder was directly related to the pain from injuries sustained in the August 13, 1997, accident. He opined appellant had reached maximum psychological improvement.

A hearing was held between June 14, 2004 and June 16, 2004 before ALJ Timothy Wilson for a determination of workers' compensation benefits associated with the August 13, 1997, accident. Judge Wilson made numerous findings of facts and conclusions of law. Pertinent to this appeal, Judge Wilson held:

V. Nature & Extent of Permanent Disability

The accident of August 13, 1997, caused [appellant] to sustain an injury in the nature of a low back strain which resulted in him sustaining an aggravation of a preexisting lumbar disc disease and an aggravation of a preexisting lumbar osteoarthritic disease. Additionally, this injury resulted in [appellant] suffering psychological overlay or post-traumatic stress.... The injury did not necessitate surgical intervention.

\* \* \* \* \* \*

I resolve the differences in the evidence submitted by the parties in favor of the testimonies and opinions of Dr. Woodward, Dr. Paff, Dr. McBride, and Dr.

Cross, who I find to be credible. In particular, I find the testimony of Dr. Cross to be compelling and persuasive.

\* \* \* \* \* \*

In addition, while [appellant] asserts that the accident of August 13, 1997, including both the physical component of the injury and the psychological component associated with the post-traumatic stress, is solely responsible for him suffering disabling pain of a sever nature, I disagree. [Appellant] seemingly ignores other factors unrelated to the accident of August 13, 1997.

\* \* \* \* \* \*

Accordingly, after consideration and review of the evidence, I find and conclude that, as a consequence of the accident of August 13, 1997, [appellant] sustained a permanent partial disability of 25 percent to the body as a whole, referable to the lumbar spine (100 weeks). The accident of August 13, 1997, considered alone, does not render [appellant] permanently and totally disabled.

\* \* \* \* \* \*

VII. Doubling of the Temporary or Partial Award

Appellant seeks a doubling of the Temporary or Partial Award, contending that the employer and insurer failed to comply with the Temporary or Partial Award issued by Judge Holden. The employer and insurer, however, complied with the Temporary or Partial Award. Accordingly, the employee's request for a doubling of the award is denied.

█ In Point I, appellant claims that the Commission erred in denying permanent total disability arising from physical and psychological injuries. Appellant claims that the Commission disregarded undisputed testimony which supported appellant's claim for psychological injuries. He concludes this was error because the Commission is only free to ignore such

evidence when it finds the evidence to be unbelievable or not credible. He concludes it was an error because any award of less than permanent total disability was against the weight of the evidence. Specifically, appellant claims the undisputed testimony of Drs. Moneypenny, Belz, Halfaker, Stefanowicz, and Cross showed that he suffers from psychological injuries as a result of the August 13, 1997, injury. Appellant claims that the Commission ignored this testimony which was not impeached and was found to be credible.

█ Generally, acceptance or rejection of medical evidence is for the Commission and it is free to disbelieve uncontradicted and unimpeached testimony. *Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527 (Mo. banc 1993). However, "when a workers' compensation record shows no conflict in the evidence or impeachment of witnesses, 'the reviewing court may find the award was not based upon disbelief of the testimony of the witnesses.'" *Houston v. Roadway Express, Inc.,* 133 S.W.3d 173, 179 (Mo.App.2004), *quoting Corp v. Joplin Cement Co.,* 337 S.W.2d 252, 258 (Mo. banc 1960). "[T]he Commission may not arbitrarily disregard and ignore competent, substantial and undisputed evidence of witnesses *who are not shown by the record to have been impeached,* and the Commission may not base their finding upon conjecture or their own mere personal opinion unsupported by sufficient competent evidence." *Id.* [Emphasis in original.] These rules are not in contradiction and are compatible. "If the Commission expressly declares that it disbelieves uncontradicted or unimpeached testimony, or if reference to the award shows that Commission's disbelief of the employee or his doctor was the basis for the award, then the *Alexander* rule attends." *Id.* "On the other hand, the *Corp* rule attends where the record is wholly silent concerning the Commission's weighing of credibility." *Id.*

In this case, we find the record is not wholly silent on the issue of credibility as the appellant suggests. In his findings, which the Commission incorporated, ALJ Wilson directly stated, "I resolve the differences in the evidence submitted by the parties in favor of the testimonies and opinions of Dr. Woodward, Dr. Paff, Dr. McBride, and Dr. Cross, who I find to be credible. In particular, I find the testimony of Dr. Cross to be compelling and persuasive." Implicit in this statement is the fact that Judge Wilson finds the other witnesses to be not as credible.

Because the record is not "wholly silent concerning the Commission's weighing of credibility" the *Alexander* rule applies. Judge Wilson was free to disbelieve uncontradicted and unimpeached testimony of any witnesses who he did not feel were as credible as others. This includes Drs. Moneypenny, Belz, Halfaker, and Stefanowicz. Therefore, appellant's claim that the Commission was in error for ignoring these doctors' testimony is incorrect. Judge Wilson weighed their credibility and found them not as credible as other doctors. He was therefore free to reject their testimony.

Appellant also claims that the Commission ignored the testimony of Dr. Cross, and that such testimony showed that he suffered from psychological injuries from the August 13, 1997, accident. Judge Wilson directly stated that he found Dr. Cross's testimony to be credible and persuasive, so the Commission may not disregard his unimpeached or uncontradicted testimony. In his report and during direct examination, Dr. Cross stated that appellant suffered from "major depression, though there may be a strong situational component, as well as apparent diagnosis of posttraumatic stress related to the motor vehicle accident." We find that Judge Wilson did not ignore and disregard this testimony. Rather, he specifically addressed it in his report. He stated:

> Dr Cross ⋯ testified that [appellant] suffers from major depression and psychological overlay or post-traumatic stress, which in part, explains his pain behavior. Additionally, while Dr. Cross does not believe the accident of August 13, 1997, is causally related to the major depression; he acknowledges that the vehicle accidents (both occurring on August 13, 1997, and November 6, 1998) are causally related to the psychological overlay or post-traumatic stress which merited certain treatment for pain management.

Judge Wilson analyzed the evidence and concluded this testimony, along with the testimony of the other doctors he found credible, did not lead to a level of a permanent total disability directly contributable to the August 13, 1997, injury. The record supports this finding. Judge Wilson concluded the accident on November 6, 1998, was a substantial contributing factor to appellant's depression. After this accident, appellant began noting the stress. After this accident, appellant began seeing psychologists. Even Dr. Cross, during his examination, stated that he thought the November 6, 1998, accident "would probably be a little bit more stress inducing, especially within a year on the heels of a prior accident."

We find that the record, viewed as a whole, supports the Commission's finding that the accident of August 13, 1997, did not render appellant permanently and totally disabled. The Commission concluded he had a permanent partial disability of 25% to the body as a whole, referable to the lumbar spine. The Commission did not find appellant suffered psychological impairments as a result of the August 13, 1997, injury. Point I is denied.

In Point II, appellant contends that the Commission erred in not doubling the

temporary or partial award because the employer and insurer failed to comply with this award. Additionally appellant contends he is entitled to further treatment. Specifically, appellant argues that the Commission should have doubled the temporary or partial award because that award ordered the employer or insurer to provide surgery. Appellant claims that the employer and insurer refused to do this and, therefore, the Commission should have doubled the award under § 287.510.

The Commission found even though there was an order for payment of surgery, there were no surgeons available to perform the surgery. Several surgeons expressed contrary opinions of the necessity of surgery. If there is no surgeon to perform the surgery, it is hard to fault the employer or insurer for failing to provide it.

 Section 287.510 states, "In any case a temporary or partial award of compensation may be made, . . . and the same may be kept open until a final award can be made, and if the same be not complied with, the amount thereof may be doubled in the final award, if the final award shall be in accordance with the temporary or partial award." We initially note that the decision to assess the penalty and double the award is a matter that is discretionary with the Commission and this court will not interfere unless it appears that the decision of the Commission was clearly arbitrary and constituted an abuse of discretion. *Shaw v. Scott*, 49 S.W.3d 720, 725 (Mo.App.2001). "We will deem the act an abuse of discretion if it is shown that the ruling is clearly against the logic of the circumstances, so arbitrary and unreasonable as to shock the sense of justice, and lacking careful consideration." Id.

We find the decision to not double the award was not an abuse of discretion. The record shows that after the ALJ made the temporary or partial award, the appellant went to see Drs. McBride, Ferguson, and McQueary, all of whom decided that appellant was not a surgical candidate. This is not a case where a doctor was ready, willing, and able to perform a surgery and the employer and insurer refused to pay in accordance with a temporary or partial award. Rather, in this case, after the temporary or partial award was made authorizing surgery, the record does not reflect a doctor was available to perform such surgery. The employer and insurer can not be asked to provide a surgery for appellant when a doctor was not available to perform such surgery. Therefore, it was not an abuse of discretion for the Commission to find that the employer and insurer complied with the temporary or partial award and to refuse to double the penalty. Point II is denied.

The decision of the Commission is affirmed.

RAHMEYER, P.J., and PARRISH, J., concur.