LOUISE McMAIN ET AL., Appellants, v. J. J. CONNOR & SONS CONSTRUCTION COMPANY ET AL.—85 S. W. (2d) 43.

Division One, July 9, 1935.*

---

*NOTE: Opinion filed at September Term, 1934, April 17, 1935; motion for rehearing filed; motion overruled at May Term, July 9, 1935.

*Philip L. Levi, Leo B. Parker* and *Joseph Cohen* for appellants.

42

*Carl J. Marold* and *Shughart & Johnson* for respondents.

GANTT, P. J.—The widow and minor children of George K. Mc-Main, deceased, seek compensation for his death. He drove from Sedalia to Kansas City, and at the time of his death was returning to Sedalia in the automobile. Claim was filed with the commission alleging that his death was the result of an accident arising out of and in the course of his employment. The employer and insurer denied the allegation and alleged that McMain and Huckleberry, who accompanied him, were intoxicated, and further alleged that his death was the direct result of said intoxication. The compensation claimed is $8228.

The commission, James, Commissioner, dissenting, found that the accident did not arise in the course of McMain's employment and denied compensation. On review the circuit court affirmed the award denying compensation, and claimants appealed.

The question presented is stated by claimants as follows: "Was this the employer's trip, or was it employee's trip?" A like or similar question has not been determined by this court or an appellate court of this State. In this situation claimants cite Marks v. Gray, 251 N. Y. 90, 167 N. E. 181. In that case the rule is stated as follows:

"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. . . . The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. [Clawson v. Pierce-Arrow Motor Co., 231 N. Y. 273, 131

N. E. 914.] If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.''

The rule as stated has been approved in Barragar v. Industrial Commission of Wisconsin, 238 N. W. 368.

There was no conflict in the evidence. Even so, they disagree on the inferences that may be drawn from the evidence. In substance the evidence follows:

George K. McMain was an employee of Connor & Sons Construction Company as timekeeper on the construction of a pipe line through counties in Missouri. At the time the headquarters of the construction were at Sedalia, Missouri. He had assistants to help him check the time of the five hundred men on the construction. At seven A. M. and in the afternoon of each day they checked the number of men at work. McMain mailed daily reports of the checks to the head timekeeper, A. G. Baker, at Kansas City, Missouri. The men were paid on the fifth and twentieth of each month. It also was the duty of McMain, prior to the fifth and twentieth of each month, to make a summary of the payroll for the preceding half month. He also had office duties to perform, had no regular hours to work, and was sometimes called from home to the office as late as nine P. M. The method of the performance of his duties was left to his discretion. It was customary for him to mail the semi-monthly summaries to Baker at the company's office in Kansas City, Missouri. However, on one occasion, prior to his death, a semi-monthly summary was delivered to Baker at his home in Kansas City, Missouri, by McMain's wife. Baker testified that he (Baker) ''guessed'' McMain was authorized to personally deliver summaries to the office in Kansas City. The pay checks for the men were issued by Baker after he checked McMain's summary against the office payroll. It was the duty of McMain to make the summaries as soon as he could do so.

On Saturday, November 1, 1930, ''the pipe gang were up with the paint gang,'' and for that reason there was no work for the ''pipe gang'' that day. ''And so Mc (McMain) made out his payroll for the past fifteen days.'' Melvin Huckleberry, an employee on construction, was not working that day and assisted McMain with the work. They had been acquaintances for ten years. After completing the summary McMain went home, changed clothing and in employee Connor's car left Sedalia at eleven-thirty A. M. for Kansas City, Missouri. He was accompanied by Huckleberry. At the time McMain's car was not in running condition. Connor did not know that McMain had taken his car for a trip to Kansas City. However, the cars of employees ''were used in the work of the employer,

and there was a custom that in case the car of one man was incapacitated he might use the car of one of the other men in duties to be performed on behalf of the employer. Gas, oil, tires and repairs were furnished to these cars by the employer." On arrival at Kansas City they parked the car and walked to the Fairfax Building in which the construction company had its office. McMain went to the office and delivered the semi-monthly summary to Baker. He remained thirty minutes and in general conversed with Baker about the work. He also procured blank papers used in making summaries. On leaving the office at two-thirty P. M. he joined Huckleberry, who awaited in front of the building. They went to a shirt company and made personal purchases. They then went to the car, in which McMain placed the blank papers, after which they drove to a bar in North Kansas City, Missouri, where each had three drinks. They remained at the bar about one hour and thirty minutes. They then drove to a used tire establishment in North Kansas City, Missouri, arriving about four-thirty P. M. McMain's car was in need of tires. However, they purchased no tires. At five P. M. they drove to Kansas City, Kansas, where McMain visited his brother for forty-five minutes. They then drove to a cafe in said city where they had dinner, after which they drove to a barber shop in said city. Huckleberry patronized the shop and McMain drove to his sister's home in said city where he visited until eight-thirty P. M. On leaving he carried from the sister's home his "sheep-lined coat." At that time he showed no "signs of intoxication." They met at the Chocolate Shop in said city where they remained an hour. They then drove around for forty-five minutes and returned to Fourteenth and Main in Kansas City, Missouri, about nine-thirty P. M. At this time they separated and Huckleberry went to a show. McMain drove to South Kansas City, Missouri, to visit friends. They met at a restaurant about midnight. There is no evidence tending to show how long they remained at the restaurant. They left Kansas City about two-thirty A. M. on Sunday, November 2, 1930, for Sedalia. It was their duty to report for work at seven A. M. on that day. McMain was driving the car. Huckleberry remembered the purchase of gasoline at a filling station after they left the restaurant. He did not remember the location of the station. On leaving Kansas City he fell asleep. At a point about a mile east of Lees' Summit the car left the pavement and collided with a tree, which resulted in the death of McMain and injury to Huckleberry.

The commission ruled as follows:

"We believe from the evidence that the employee had gone to Kansas City on November 1st, on a purely personal mission and since it was time to send the reports to Kansas City, he took them along and delivered them to Mr. Baker. Since we find that his trip to Kansas City was a personal matter primarily, does the fact that

he took along the reports bring him within the course of his employment? We think not. Such a holding would lead to absurd results in employments of this character. For instance, it was the duty of this employee to send daily reports to Kansas City and each night he might have had personal business in said city and on these trips he could have taken the reports with him, and we would then have to say that the employer would be liable for any injury which occurred to him while going to and from Kansas City, and we do not believe this to be the intention of the law. . . .

"It is true that the Courts have said that so long as an employee is performing an act which he was employed to do the fact that he does same negligently or in some manner other than the way in which he was instructed will not prohibit him from receiving compensation for an injury received, but this rule must certainly be governed and modified by each particular case. Let us suppose that instead of the office of this company being in Kansas City that it was in Chicago and it was the employee's duty, as we have in the case at bar, to mail his reports to Chicago. He might then decide that he would like to see the city of Chicago and would get in an automobile and deliver his reports to the Chicago office. We certainly could not say that the employer would be liable for any injury he might have received while going to and from the city of Chicago. To do so would make the employer liable for a condition which certainly was not contemplated by either the employer or the employee as a risk incident to his employment.

"We therefore find that the accident which resulted in McMain's death did not ocur at a time where his service required him to be, nor while he was performing any duty of his employment, and did not arise 'in the course of' said employment and compensation must be denied. We also do not believe this accident arose 'out of' McMain's employment, but it is not necessary to go into this feature of the case."

We think the finding should be sustained. The evidence tended to show that, with one exception, the daily and semi-monthly summaries had been mailed to Kansas City; that the duties of McMain did not require him either to personally deliver the summary to the Kansas City office, or to personally procure stationery from said office; that his duties also did not require him to purchase tires in Kansas City on said day; that the head timekeeper had not called for delivery of the summary at the Kansas City office, and that its delivery at said time and place did not hasten the issuance of the checks to the men on the construction.

Furthermore, only a part of the men were at work on that day. From this it could be inferred that McMain would not be needed at his office that afternoon and evening; that he so informed Huckleberry, who assisted him with the work that they might go to Kansas

City, and that the summary, stationery and tires were not an inducing cause of the trip. In other words, it could be inferred that the trip to Kansas City would not have been made for the purpose of delivering the summary, procuring stationery and purchasing tires. It also could be inferred that the sole purpose of the trip was the desire of McMain and Huckleberry to spend the afternoon and evening of that day in Kansas City in pursuit of pleasure and their own personal affairs. Other matters were incidental.

The finding of the commission was supported by substantial evidence, and the judgment should be affirmed. It is so ordered. All concur.

*NOTE: Opinion filed at September Term, 1934, April 17, 1935; motion for rehearing filed: motion overruled at May Term, July 9, 1935.