BYE, Circuit Judge,
concurring in part and dissenting in part.
For all the reasons stated in Section III of the majority’s opinion, I agree Hudson is not collaterally estopped from litigating the coverage dispute at issue in this case. See Allstate Ins. Co. v. Blount, 491 F.3d 903, 908 (8th Cir.2007) (applying Missouri law and recognizing state court proceedings conducted pursuant to Mo.Rev.Stat. § 537.065 did not deprive an insurer of its right to be heard later on the question of policy coverage). I also agree Missouri’s dual purpose doctrine controls in determining whether Tyler Roush was acting in the course of Brash Tygr’s business when he struck and severely injured a pedestrian while driving his mother’s car.
I disagree, however, with the majority’s application of the dual purpose doctrine to the undisputed facts of this case. I therefore respectfully dissent from the decision to reverse the summary judgment granted to Brash Tygr on the coverage issue.
I
As the majority acknowledges, under Missouri’s dual purpose doctrine “[i]t is enough that some one would have had to make the trip to carry out the business mission.” Corp v. Joplin Cement Co., 337 S.W.2d 252, 255 (Mo.1960). The majority claims Brash Tygr submitted no evidence that some Sonic employee would have had to make a trip to the bank for the deposit bags if Tyler Roush had not done so. To the contrary, the fact that Brash Tygr representatives periodically went to the bank to retrieve the Sonic bank deposit bags was undisputed. Indeed, Hudson *595 specifically admitted that fact in the summary judgment proceedings.
In its order granting summary judgment, the district court listed a number of undisputed facts. One of the undisputed facts in this case was that “Brash Tygr, LLC, used bank bags provided by Carroll County Trust Company to make deposits to Brash Tygr, LLC’s checking account at Carroll County Trust Company.” Addendum at 22. A second undisputed fact was that “[o]n occasions before August 3, 2009, a representative of Brash Tygr, LLC, periodically went to Carroll County Trust to retrieve the Sonic bank deposit bags.” Id. The district court cited Hudson’s Response to Brash Tygr’s Statement of Uncontro-verted Facts in support of these two undisputed facts. See id.
In Brash Tygr’s Statement of Uncontro-verted Facts submitted in accordance with Local Rule 56.1 of the Western District of Missouri,[5] Brash Tygr had averred that “[pjrior to and including August 3, 2009, a representative of Brash Tygr, LLC, periodically went to Carroll County Trust to retrieve the Sonic bank deposit bags.” Dist. Ct. Docket Entry No. 13 at 24. In its response, Hudson specifically acknowledged it was “uncontroverted that Brash Tygr, LLC ... used bank bags provided by Carroll County Trust Company to make deposits to Brash Tygr, LLC’s checking account at Carroll County Trust Company.” Dist. Ct. Docket Entry No. 36 at 8. Hudson also acknowledged it was “[u]controverted that on occasions before August 3, 2009, a representative of Brash Tygr, LLC, periodically went to Carroll County Trust to retrieve the Sonic bank deposit bags.” Id.
Hudson therefore admitted bank deposit bags were used in the course of Sonic’s business, and someone from Sonic or Brash Tygr made periodic trips to the bank to retrieve the bags. See W.D. Mo. R. 56.1(a); see also Missouri Hous. Dev. Comm’n v. Brice, 919 F.2d 1306, 1315 (8th Cir.1990) (“[A]dmissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions.”). Given Hudson’s admission under Local Rule 56.1, the majority’s reference to parts of the record it claims are inconsistent with the admission are irrelevant. See Harris v. Interstate Brands Corp., 348 F.3d 761, 762 (8th Cir.2003) (concluding a district court properly granted summary judgment based on facts deemed admitted under Local Rule 56.1 of the Western District of Missouri); see also Nw. Bank & Trust Co. v. First Ill. Nat’l. Bank, 354 F.3d 721, 725 (8th Cir. 2003) (“District courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions.”) (quoting Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994)).
Moreover, no matter how many deposit bags Sonic may have had at its disposal, the restaurant’s undisputed use of the bags would necessitate a trip to the bank at some point to retrieve them — the court *596 cannot be positing that Sonic had a limitless supply of deposit bags.
I therefore believe the majority’s decision is inconsistent with Missouri’s application of the dual purpose doctrine in at least two respects. First, the majority indicates Brash Tygr was required to submit evidence showing “some Sonic employee or Brash Tygr Agent would have had to make a special trip to the bank for deposit bags if Tyler Roush had not brought them to his parents’ home.” Ante at 592 (emphasis added). Missouri law does not, however, require Brash Tygr to prove retrieving the deposit bags required a “special” trip. See Corp, 337 S.W.2d at 255 (“[I]t is not necessary that ... the business trip would have been taken anyway by this particular employee at this particular time. It is enough that some one would have had to make the trip to carry out the business mission.”) Neither does Missouri law require Brash Tygr to prove Tyler Roush himself had picked up the bags on previous occasions. Rather, by acknowledging bank deposit bags were used in the course of Brash Tygr’s business, and that Brash Tygr representatives periodically went to the bank to retrieve the deposit bags, Hudson necessarily admitted the trips to the bank served a business purpose. As a consequence, Tyler Roush’s particular trip on August 3 fell squarely within Missouri’s dual purpose doctrine.
Second, the majority relies upon George Roush’s averment that “[t]he bank bags themselves were not required to make deposits at Carroll County Trust Company.” Ante at 595 (quoting Roush’s affidavit dated December 10, 2010).[6] This point is irrelevant, because the fact that the bank bags were actually used in the course of Brash Tygr’s business was undisputed. Our only inquiry should be whether the August 9 trip served a dual purpose, given the undisputed fact that Brash Tygr actually used bank deposit bags and made trips to the bank to retrieve the bags in the ordinary course of its business. By relying upon the fact that use of the bank deposit bags was not required, the majority improperly focuses on the necessity of the underlying business practice rather than the necessity of the trip. In other words, it is one thing to examine whether a particular trip has a necessary business purpose; it is another thing entirely to question whether a particular business practice is necessary.
I do not believe Missouri law supports the majority’s approach. For example, the majority cites McMain v. J.J. Connor & Sons Construction Co., 337 Mo. 40, 85 S.W.2d 43 (1935), as one of the cases in support of its holding. In McMain, the Missouri Supreme Court determined a trip taken by George McMain in the course of his employment fell outside the dual purpose doctrine. The business practice at *597 issue was McMain’s preparation of semimonthly payroll summaries at his location in Sedalia, Missouri, and subsequent submission of the summaries to the home office in Kansas City, Missouri. The court noted it was customary for McMain to mail the summaries, but on at least one occasion McMain’s wife had personally delivered a summary to Kansas City, and the company president “guessed” McMain was authorized to personally deliver the summaries rather than mail them. 85 S.W.2d at 44.
During the trip at issue, McMain decided to hand-deliver the summaries while on a personal trip to Kansas City rather than follow the customary practice of mailing the summaries. The court determined the personal trip fell outside the dual purpose doctrine because the normal business practice had been to mail the summaries rather than personally deliver them, and thus McMain’s duties “did not require him to personally deliver the summar[ies] to the Kansas City office.” Id. at 46. Significantly, however, the court did not question the necessity of the underlying business practice, that is, whether McMain’s employer was required to prepare summaries and transmit them from Sedalia.to Kansas City. To the contrary, the court only examined McMain’s trip to determine whether it had a necessary business purpose.
Here, in contrast, the majority implicitly relies upon an examination of the necessity of the underlying business practice — the use of bank deposit bags — to conclude a particular trip was unnecessary. And the court does so despite the fact that Hudson admitted the customary manner in which Brash Tygr conducted its business was to use bank deposit bags, and to occasionally make trips to the bank to retrieve the bags.
II
Section II.C. of the majority’s opinion is based on a recitation of facts directly inconsistent with an undisputed fact admitted by Hudson. As a consequence, I respectfully dissent from that portion of the majority’s opinion and its decision to reverse the summary judgment in favor of Brash Tygr on the issue of coverage.

. Local Rule 56.1 provides as follows:
Suggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be set forth in a separate paragraph, shall refer specifically to those portions of the record upon which the opposing party relies, and, if applicable, shall state the paragraph number in movant’s listing of facts that is disputed. All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party.
W.D. Mo. R. 56.1(a) (emphasis added).

. The origin of Roush’s December 2010 affidavit is dubious. It was created at a time when an attorney hired by Hudson represented Brash Tygr in the underlying Miller lawsuit (Brash Tygr subsequently hired a different attorney to negotiate the settlement of the Miller lawsuit). Roush's statement appears to be based on a deposition the Hudson-hired attorney took of a bank representative a couple months earlier, in which the attorney asked “Just out of curiosity, do your businesses that do business with you need a bag to make a night deposit ... ?” The bank representative responded "No. They can make it with an envelope or they could throw the cash in there if they wanted to do that. I wouldn’t do it, but.” Deposition of Ben Polen, App’x at 915.
I am not at all surprised that a fast food restaurant — open after regular banking hours and receiving large amounts of cash during that time — customarily uses bank deposit bags to get cash safely to the bank. In fact, I would be surprised if a fast food restaurant did not follow such a practice.