In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

MARK LYNCH, ) No. ED109502
 )
 Claimant/Appellant, ) Appeal from the Labor and Industrial
 ) Relations Commission
vs. ) Injury Nos. 09-101188 and 09-039485
 )
TREASURER OF THE STATE )
OF MISSOURI, CUSTODIAN OF )
THE SECOND INJURY FUND, ) Filed: October 19, 2021
 )
 Respondent. )

 The claimant, Mark Lynch, appeals from the final award of the Labor and Industrial

Relations Commission denying his claim against the Second Injury Fund (“the Fund”) for

permanent total disability benefits. We find the Commission ignored the uncontradicted and

unimpeached evidence, including the only qualified expert medical opinion in the record,

without explanation and without a reasonable basis for finding the witnesses not credible, and

instead substituted its own theory of the cause of Claimant’s permanent total disability. We find

the Commission’s award concluding the Fund is not liable for Claimant’s permanent and total

disability is not supported by sufficient competent evidence and is against the overwhelming

weight of the evidence. We reverse and remand the decision of the Commission.

 Factual and Procedural Background

 Claimant worked for Anheuser-Busch Companies, Inc. (“the employer”) as a brewery

worker from 1974 until his retirement in January 2009. During his 35 years with the employer,
Claimant worked in the draft beer and kettle departments, performing physically demanding and

often repetitive tasks such as driving a forklift to move and stack pallets and barrels; cleaning

kettles measuring 15 to 20 feet high; carrying 10-gallon buckets of ingredients from another floor

to the kettles and dumping the buckets into the kettles at least 50 times per day; breaking up large

bales of compressed hops so the hops could be crumbled and weighed; dumping 100-pound

containers of hops into kettles 13 times per day; and pushing 1,000-pound containers filled with

used beechwood chips through the brewery. Claimant estimated that when he worked as a

brewer with the kettles, he had to pull open and push closed the kettles’ vacuum-sealed doors,

which weigh about 100 pounds, as many as 100 times per day. He filled and sealed kegs of beer,

which required using a mallet to pound a stopper into the keg opening some 1,200 times a day.

Claimant also had to regularly hand-loosen and hand-tighten large hinges on the doors of the

mash cookers, and he had to repeatedly adjust steam valves, often by using a heavy mallet to

strike a stuck valve handle.

 Claimant sustained numerous injuries over the course of his career. He injured his neck

and low back in a boating accident in 1990, and experienced ongoing pain thereafter, obtaining

treatment from Dr. Al Vellinga both before and after retirement. Claimant later sustained two

work-related injuries to his low back, the claims for which he settled with his employer. He

underwent surgery on his left shoulder in 1991, and later settled a claim with the Fund. He

sustained a work-related injury to his right shoulder in 1995, and underwent his first right

shoulder surgery. Claimant settled the claim for his right shoulder injury with his employer.

Claimant sought treatment for pain in his right shoulder shortly before his retirement, and

underwent a second surgery on his right shoulder immediately after his January 2009 retirement.

In 2003, Claimant sought treatment for increasing pain and stiffness in his hips, and underwent

 2
total replacement of both hips. Claimant was diagnosed with osteoarthritis in both knees the year

before he retired, and x-rays also revealed progression of arthritis around his right hip.

 Claimant sought treatment from Dr. Vellinga with primary complaints of neck and low

back pain one month after his retirement and right shoulder surgery. Although not acknowledged

in the Commission’s decision, Dr. Vellinga’s records dated February 11, 2009 report Claimant

also complained of weakness of the right upper extremity along with numbness and paresthesia

of his right hand. 1 Throughout the spring of 2009, Claimant continued to report numbness and

paresthesia in his right hand. Dr. Vellinga found Claimant’s right hand grasp was weak, and

referred him to neurologist Dr. Robert Margolis. Claimant consulted Dr. Margolis five months

after retiring for numbness and tingling in his hands and feet, underwent EMGs and nerve

conduction studies ordered by Dr. Margolis, and received a diagnosis of carpal tunnel syndrome.

Claimant sought treatment for his carpal tunnel syndrome from Dr. Vic Glogovac in September

2009, and filed workers’ compensation claims for injury to his hands and ears in December

2009. In the fall of 2010, Claimant underwent a carpal tunnel release on each wrist performed by

Dr. Glogovac. In 2011, Claimant was examined by Dr. Mitchell Rotman, a physician hired by

the employer. Claimant reported to Dr. Rotman that the surgery had not alleviated the symptoms

in his hands. Claimant settled with the employer in 2015 for 20% permanent partial disability of

each wrist with a 10% loading factor. He continued with his claim for permanent total disability

benefits against the Fund. Claimant alleged he is permanently and totally disabled as a result of a

combination of his carpal tunnel syndrome and his preexisting conditions.

1
 “Paresthesia refers to a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can
also occur in other parts of the body.” National Institutes of Health, National Institute of Neurological Disorders and
Stroke, Paresthesia Information Page, available at https://www.ninds.nih.gov/ Disorders/All-Disorders/Paresthesia-
Information-Page (last visited Sept. 23, 2021).

 3
 The claim against the Fund was heard before an administrative law judge (“ALJ”). The

Fund contested the date of injury and notice to the employer, which are not at issue in this

appeal. The parties stipulated that Claimant suffered an occupational disease in the course and

scope of his employment with the employer; that his permanent total disability rate was $772.53

per week; and that his permanent partial disability rate was $404.56 per week. The Fund did not

contest the amount of permanent partial disability previously reached via settlement with the

employer. The parties further stipulated that the only other issue for determination at the hearing

was the nature and extent, if any, of the Fund’s liability. The ALJ issued an award in favor of the

Fund. Claimant appealed to the Commission. In adopting and affirming the ALJ’s award, the

Commission accordingly found that Claimant developed an occupational disease arising out of

and in the course of his employment by performing repetitive motion tasks.

 At the hearing before the ALJ, Claimant testified he experienced pain, tingling, and

numbness in his hands for over 20 years while working for the employer, including at the time of

his retirement. He described how employees were instructed to do a “swimmer’s shake” to

relieve pain and numbness in their hands. Claimant testified he needed help from other workers

to complete his job duties, relied on the advancement of technology, and struggled with the

heavy lifting required to perform his job. He stated he was no longer physically able to perform

his job duties because of the combination of the ringing in his ears, his carpal tunnel syndrome,

and all of his prior injuries.

 Claimant submitted the complete medical report of board-certified orthopedic surgeon

Dr. Dwight Woiteshek, pursuant to section 287.210 RSMo. (2016), and the report and deposition

testimony of vocational consultant Terry Cordray. 2 Dr. Woiteshek evaluated Claimant in 2011,

2
 All statutory references are to RSMo. (2016) except as otherwise indicated. Section 287.210 provides in relevant
part:

 4
and found Claimant permanently and totally disabled. Dr. Woiteshek opined that Claimant’s

“pre-existing disabilities discussed above [low back, neck, both shoulders, and both hips]

synergistically combines with the primary work related repetitious traumatic injuries leading up

to and including 1/15/09, also discussed above, to create a substantially greater overall disability

than the independent sum of the disabilities.” Dr. Woiteshek further articulated several

permanent work restrictions for Claimant, namely to minimize repetitive tasks, adopt proper

ergonomic use of the upper extremities, avoid impact and vibratory trauma, use appropriate

braces and support devices, avoid lifting more than three to five pounds with one hand with arms

extended, avoid lifting more than 10 pounds “with the arms dependent,” and performance of

daily hand exercises. Dr. Woiteshek concluded that Claimant was unable to return to any

employment as a result of the combination of his primary repetitious traumatic injuries and his

preexisting conditions. Dr. Woiteshek did not rate Claimant’s hearing loss.

 Mr. Cordray, the vocational consultant, evaluated Claimant, reviewed his education and

work history, and reviewed his medical records. He found Claimant “has significant physical

limitations that preclude all jobs in the competitive labor market,” and “is totally vocationally

disabled.” 3 Mr. Cordray reviewed medical records from nine doctors, including examining

 3. The testimony of any physician who treated or examined the injured employee shall be admissible in
 evidence in any proceedings for compensation under this chapter, but only if the medical report of the
 physician has been made available to all parties as in this section provided. …
 ***
 5. As used in this chapter the terms “physician's report” and “medical report” mean the report of any
 physician made on any printed form authorized by the division or the commission or any complete medical
 report. As used in this chapter the term “complete medical report” means the report of a physician giving
 the physician’s qualifications and the patient’s history, complaints, details of the findings of any and all
 laboratory, X-ray and all other technical examinations, diagnosis, prognosis, nature of disability, if any, and
 an estimate of the percentage of permanent partial disability, if any. An element or elements of a complete
 medical report may be met by the physician’s records.
 ***
 7. The testimony of a treating or examining physician may be submitted in evidence on the issues in
 controversy by a complete medical report ….
3
 Mr. Cordray’s report states he “do[es] not provide opinions regarding causation.”

 5
physicians Drs. Woiteshek and Rotman. Mr. Cordray included extensive excerpts from Dr.

Woiteshek’s report, and relied on the significant restrictions recommended therein to reach his

conclusion. Mr. Cordray also quoted Dr. Rotman’s report wherein Dr. Rotman opined:

 He also has quite a bit of health issues which caused him to take early retirement from
 (sic) mainly his heart. He has issues with chronic problems from his right shoulder as
 well. … Considering he had no relief from his carpal tunnel releases and the fact that his
 nerve studies were fairly normal would suggest that his continued complaints are not
 related to carpal tunnel at all but are related to more of a peripheral neuropathy that he
 had been treated for in the past. Presently, at this time, I do not see any evidence of a
 work-related injury.

No records, report, or testimony from Dr. Rotman were submitted into evidence pursuant to

section 287.210. Mr. Cordray neither testified to nor relied on Dr. Rotman’s report. The Fund

acknowledged at oral argument that Dr. Rotman’s report was not in the record. The

Commission’s decision states “Dr. Rotman noted Claimant retired due to a heart condition, along

with problems with his right shoulder.” The Fund did not submit any evidence.

 The Commission made no credibility findings regarding the testimony of either Claimant

or Dr. Woiteshek. The Commission accepted Dr. Woiteshek’s report and findings with no

contradictory evidence, and Dr. Woiteshek was not impeached. Likewise, Claimant was not

impeached. The Commission explicitly found Mr. Cordray’s opinion regarding Claimant’s total

vocational disability neither credible nor persuasive because Mr. Cordray stated he did not

consider Claimant’s subjective complaints, yet his report included a list of such complaints. The

Commission found Claimant admitted he retired before seeking treatment for his upper

extremities and was diagnosed with carpal tunnel syndrome only after his retirement.

 Citing Claimant’s lack of diagnosis of and treatment for carpal tunnel syndrome prior to

retirement, and bolstered by a purported quote of Dr. Rotman included in Mr. Cordray’s report,

the Commission found “[Claimant]’s primary injury does not contribute to his overall permanent

 6
and total disability.” Rather, the Commission found Claimant retired and removed himself from

the open labor market because of his preexisting disabilities:

 The evidence of this case demonstrates Claimant’s permanent and total disability is not a
 result of a combination of the primary injury and the preexisting disabilities. The
 evidence suggests that Claimant chose to retire due to the limitations of his preexisting
 low back, neck, bilateral shoulder, and bilateral hip disabilities. Claimant, thus, fails to
 meet his burden of proof and is not entitled to benefits from the Fund.

The Commission concluded, “Claimant has not met his burden of proving his permanent total

disability results from a combination of his primary injury and preexisting disabilities.” 4 In a 2-1

decision, the Commission adopted the amended award of the ALJ denying Claimant benefits

from the Fund. Claimant appeals.

 Standard of Review

 We review all final decisions, findings, rules, and orders of the Commission to determine

“whether the same are supported by competent and substantial evidence upon the whole record.”

Mo. Const. art. V, sec. 18; White v. ConAgra Packaged Foods, LLC, 535 S.W.3d 336, 338 (Mo.

Mo. banc 2017). We will affirm the Commission’s decision unless: “(1) the Commission acted

without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by

the Commission do not support the award; or (4) there was not sufficient competent evidence in

the record to warrant the making of the award.” Section 287.495.1; Annayeva v. Special Admin.

Bd. of the Transitional Sch. Dist. of St. Louis, 597 S.W.3d 196, 198 (Mo. banc 2020); Williams v.

City of Jennings, 605 S.W.3d 152, 157 (Mo. App. E.D. 2020).

 “The Commission’s finding of causation is a question of fact.” Schlereth v. Aramark

Unif. Services, Inc., 589 S.W.3d 645, 650 (Mo. App. E.D. 2019). In addition to findings of fact,

4
 Whether Claimant was permanently and totally disabled was not identified as an issue at the hearing, and the
Commission made no explicit finding of permanent total disability. However, the Commission’s decision three
times implicitly acknowledges Claimant’s permanent and total disability as we have quoted.

 7
we defer to the Commission’s determinations of witness credibility and the weight given to

conflicting evidence. Annayeva, 597 S.W.3d at 198. Where, as here, the Commission affirms and

incorporates the ALJ’s decision in its award, we review the ALJ’s findings as adopted by the

Commission. Schlereth, 589 S.W.3d at 651.

 “The Commission’s factual findings are binding and conclusive only to the extent they

are supported by sufficient competent evidence and were reached in the absence of fraud.”

Harris v. Ralls County, 588 S.W.3d 579, 594 (Mo. App. E.D. 2019). Sufficient competent

evidence is evidence that has probative force on the issues, and from which the trier of fact can

reasonably decide the case. Schlereth, 589 S.W.3d at 650-51. When reviewing the Commission’s

decision, we view the evidence objectively, and we are not required to view the evidence and

reasonable inferences in the light most favorable to the award. Harris, 588 S.W.3d at 594.

Instead, we examine the evidence in the context of the whole record, and an award contrary to

the overwhelming weight of the evidence is, in context, not supported by competent and

substantial evidence. Id. In short, we must determine whether the Commission reasonably could

have made its findings and reached its result based on all the evidence before it. Id.

 Discussion

 Claimant challenges the Commission’s decision that he is not permanently and totally

disabled due to a combination of his carpal tunnel syndrome and his preexisting conditions. 5 The

parties have fundamentally different perspectives about the nature of the award in this case.

Claimant contends the Commission ignored the only expert medical opinion in the record, which

5
 Claimant also filed a claim alleging hearing loss and tinnitus caused by his work. However, Claimant submitted no
medical evidence of hearing loss or tinnitus. His point on appeal refers to only one “work-related injury,” and the
argument section of his brief addresses only his carpal tunnel syndrome. Allegations of error not briefed shall not be
considered in any civil appeal. Rule 84.13(a). As a result, Claimant has abandoned his appeal of the Commission’s
denial of Fund liability for his tinnitus claim, and we do not consider it.

 8
the Commission did not find lacked credibility, and substituted its own personal opinion

regarding the medical causation of Claimant’s permanent total disability. The Fund contends the

award hinges on credibility determinations, which are the exclusive province of the Commission,

and thus Claimant failed to meet his burden of persuasion. We agree with Claimant. The Fund’s

argument falls short because here the Commission neither made credibility findings nor offered

any explanation or rationale for rejecting Claimant’s testimony and for rejecting the only expert

medical opinion in the record.

 The Fund compensates workers who become permanently and totally disabled as a result

of a combination of past disabilities and a later primary work injury. Section 287.220 RSMo.

(2000); Williams, 605 S.W.3d at 158. Fund liability arises when a claimant has a preexisting

permanent partial disability constituting a hindrance or obstacle to employment or re-

employment at the time he or she sustains the primary work injury. Id. A preexisting disability

constitutes a hindrance or an obstacle to employment when there is potential for “the pre-existing

injury [to] combine with a future work[-]related injury to result in a greater degree of disability

than would have resulted if there was no such prior condition.” Id.

 Here, the Commission determined that Claimant’s permanent and total disability did not

result from a combination of his primary injury—carpal tunnel syndrome—and his preexisting

disabilities involving his low back, neck, shoulders, and hips. The Commission instead

determined that Claimant’s permanent and total disability resulted from his preexisting

disabilities only, without consideration of his carpal tunnel syndrome. Claimant contends the

synergistic effect of his preexisting disabilities when combined with his primary injury of carpal

tunnel syndrome left him unable to work on the open labor market and resulted in his permanent

and total disability. He argues the Commission’s denial of permanent total disability benefits

 9
from the Fund is not supported by substantial and competent evidence and is contrary to the

substantial weight of the evidence.

 When a claimant challenges the Commission’s findings on this basis, the claimant must:

(1) marshal all record evidence favorable to the award; (2) marshal all unfavorable evidence,

subject to the Commission’s explicit or implicit credibility determinations; and (3) show, in the

context of the whole record, how the unfavorable evidence so overwhelms the favorable

evidence and its reasonable inferences that the award is, in context, not supported by competent

and substantial evidence. Schlereth, 589 S.W.3d at 652. Adherence to this analytical framework

is mandatory because it reflects the underlying criteria necessary for a successful challenge. Id. A

challenge cannot succeed absent any of the criteria. Id.

 Claimant first identifies the evidence favorable to the Commission’s award. It was

undisputed that Claimant suffered from numerous preexisting injuries resulting in disabilities to

his low back, neck, both shoulders, and both hips that rendered it difficult for him to perform his

job duties. The Commission based its award on Claimant’s testimony that he did not seek

treatment for carpal tunnel syndrome before he retired, and indeed, he retired before receiving a

diagnosis of carpal tunnel syndrome. The Commission further found that, “[t]wo years after

retirement, Claimant sought additional treatment for carpal tunnel syndrome, and indicated to Dr.

Rotman his retirement was not induced by symptoms of carpal tunnel syndrome.” This finding,

however, misstates the record as we discuss below.

 Next, in marshalling the evidence contrary to the award, Claimant testified he

experienced pain, tingling, and numbness in his hands for over 20 years while working for the

employer, including at the time of his retirement. He described how employees were instructed

to do a “swimmer’s shake” to relieve pain and numbness in their hands. Claimant testified that

 10
while he did not realize before he retired that he had carpal tunnel syndrome specifically, he

nevertheless had problems with both wrists and hands leading up to his retirement. He needed

help from other workers to complete his work, and struggled with the heavy lifting required to

perform his job duties. He also testified his carpal tunnel syndrome, combined with his prior

injuries, prompted him to retire and rendered him unable to work. Claimant’s medical expert, Dr.

Woiteshek, concluded that Claimant is permanently and totally disabled as a result of his carpal

tunnel syndrome synergistically combining with his preexisting conditions. Dr. Woiteshek

opined that Claimant’s injuries and conditions, including carpal tunnel syndrome, combined to

create overall greater disability than the simple sum of each separate injury or condition.

 Although not acknowledged in the Commission’s decision, Dr. Vellinga’s records dated

February 11, 2009 report Claimant complained of weakness of the right upper extremity along

with numbness and paresthesia of his right hand. Throughout the months following his

retirement, Claimant continued to report to Dr. Vellinga numbness and paresthesia in his right

hand. Dr. Vellinga found Claimant’s right-hand grasp was weak, and referred him to neurologist

Dr. Robert Margolis. Claimant consulted Dr. Margolis in June 2009 for numbness and tingling in

his hands and feet, underwent EMGs and nerve conduction studies ordered by Dr. Margolis, and

received a diagnosis of carpal tunnel syndrome. Claimant sought treatment for his carpal tunnel

syndrome from Dr. Vic Glogovac in September 2009, which again the Commission’s decision

does not acknowledge. In the fall of 2010, Dr. Glogovac performed a carpal tunnel release on

each of Claimant’s wrists.

 In its findings, the Commission correctly notes that Claimant consulted neurologist Dr.

Margolis for numbness and tingling in his hands in June 2009, five months after retiring. The

Commission does not mention, however, that Claimant reported problems with his hands to Dr.

 11
Vellinga beginning in February 2009, or that he sought treatment from Dr. Glogovac beginning

in September 2009. Rather, in concluding that Claimant did not consider his primary hand and

wrist injury in his retirement plans, the Commission focused on the fall of 2010 when Claimant

underwent carpal tunnel release surgery on each wrist. The Commission further states, “[t]wo

years after retirement, Claimant sought additional treatment for carpal tunnel syndrome, and

indicated to Dr. Rotman his retirement was not induced by symptoms of carpal tunnel

syndrome.”

 In addition to ignoring competent and substantial medical evidence of Claimant’s

complaints and treatment, the Commission’s decision misstates the record. Dr. Rotman did not

treat Claimant for problems with his hands and wrists. Dr. Rotman was a physician hired by the

employer to examine Claimant in 2011 for purposes of his worker’s compensation claims.

However, no certified medical records, complete medical reports, or deposition or live testimony

from Dr. Rotman were submitted into evidence in accord with the provisions of sections

287.140.7 and 287.210. 6 The Fund acknowledged at oral argument that Dr. Rotman’s report is

not in the record. The provisions of the Workers’ Compensation Law are to be strictly construed.

Section 287.800.1. Therefore, the ALJ, the Commission, and this Court cannot accept as

substantial and competent evidence a purported excerpt from an examining physician’s report,

quoted in the report of a non-medical witness, about what Claimant allegedly told the physician.

Such an excerpt does not qualify as a certified medical record under section 287.140.7. It does

6
 Section 287.140.7 states:

 Every hospital or other person furnishing the employee with medical aid shall permit its record to be copied
 by and shall furnish full information to the division or the commission, the employer, the employee or his
 dependents and any other party to any proceedings for compensation under this chapter, and certified
 copies of the records shall be admissible in evidence in any such proceedings.

(Emphasis added).

 12
not qualify as a complete medical report under 287.210. It does not qualify as deposition or live

testimony.

 The Commission nevertheless relied on this purported excerpt from Dr. Rotman’s report

cited only by Mr. Cordray in his vocational report. The Commission relied on this information

despite explicitly finding Mr. Cordray neither persuasive nor credible, and consequently finding

the report of Mr. Cordray not persuasive and not credible. The quote on which the Commission

relied is less than clear: “He also has quite a bit of health issues which caused him to take early

retirement from mainly his heart. He has issues with chronic problems from his right shoulder as

well.” In short, the Commission then relied on this unclear quote to find Claimant “indicated to

Dr. Rotman his retirement was not induced by symptoms of carpal tunnel syndrome.” This

finding is not supported by substantial competent evidence.

 In the context of the whole record, the unfavorable evidence so overwhelms the favorable

evidence and its reasonable inferences that the award is, in context, not supported by competent

and substantial evidence. The sole expert medical evidence presented—the qualified medical

opinion of Dr. Woiteshek—was that Claimant is permanently and totally disabled because of a

synergistic combination of his carpal tunnel syndrome and preexisting injuries. The Commission

did not find Dr. Woiteshek lacked credibility or was not persuasive, and Dr. Woiteshek was not

impeached. The Commission, however, ignored Dr. Woiteshek’s uncontradicted opinion without

explanation, and instead determined that Claimant retired because of his neck, back, shoulder,

and hip problems, without consideration of his carpal tunnel syndrome. No medical expert

opined that Claimant was permanently and totally disabled because of his preexisting disabilities

without considering his hand and wrist problems. The Commission was not free to arbitrarily

disregard and ignore Dr. Woiteshek’s testimony regarding the cause of Claimant’s disability, and

 13
instead “base its finding ‘upon conjecture or its own mere personal opinion unsupported by

sufficient competent evidence.’” Hazeltine v. Second Injury Fund, 591 S.W.3d 45, 63 (Mo. App.

E.D. 2019)(quoting Lawrence v. Treasurer of State-Custodian of 2nd Injury Fund, 470 S.W.3d 6,

16 (Mo. App. W.D. 2015)).

 In addition, Claimant testified that he experienced problems with his hands and wrists for

many years before his retirement. He explained how the employer instructed him to do a

“swimmer’s shake” to relieve numbness and pain in his hands. He consistently testified he was

no longer physically able to perform his job duties because of the combination of the ringing in

his ears, his carpal tunnel syndrome, and all of his prior injuries. The Commission did not find

Claimant was not credible, nor was Claimant impeached. The Commission simply relied on

Claimant’s lack of treatment for and specific diagnosis of carpal tunnel syndrome before he

retired. At the same time, the Commission ignored other portions of Claimant’s testimony where

he stated he had issues and problems with his hands and wrists, but did not know he had carpal

tunnel syndrome specifically until diagnosed. And the Commission ignored the qualified medical

opinion of Dr. Woiteshek entirely. Because neither Claimant nor Dr. Woiteshek were explicitly

found not credible, contradicted, or impeached, we find the Commission erred in disregarding

this evidence.

 Only to the extent they are supported by sufficient competent evidence are the

Commission’s factual findings binding and conclusive. Williams, 605 S.W.3d at 159. The record

must contain medical testimony or evidence supporting the Commission’s finding of causation.

Id. Absent medical testimony, any finding of causation would be based merely on conjecture and

speculation rather than on substantial evidence. Id. The Commission may not substitute an ALJ’s

personal opinion regarding medical causation for the uncontradicted testimony of a qualified

 14
medical expert. Angus v. Second Injury Fund, 328 S.W.3d 294, 300 (Mo. App. W.D. 2010).

“When expert medical testimony is presented, an ALJ’s personal views of [the evidence] cannot

provide sufficient basis to decide the causation question, at least where the ALJ fails to account

for the relevant medical testimony.” Williams. 605 S.W.3d at 159-60. Likewise, where the record

is silent on the Commission’s findings on the weight of witness credibility, and neither the

claimant nor the testifying experts were contradicted or impeached, the Commission “may not

arbitrarily disregard and ignore competent, substantial and undisputed evidence.” Id. at 160

(quoting Hazeltine, 591 S.W.3d at 59).

 Yet this is precisely what occurred here. In determining the Fund had no liability, the

Commission ignored the parties’ stipulation that Claimant suffered an occupational disease

within the course and scope of his employment, medical records of Claimant’s 2009 complaints

of hand and wrist problems, and Claimant’s testimony that the problems with his hands were a

factor in his decision to retire. He just did not know the specific diagnosis for the problems with

his hands. There was no evidence to contradict Claimant’s 2015 settlement with the employer for

20% permanent partial disability of each wrist with a 10% loading factor. Instead, the

Commission focused on Claimant’s lack of a diagnosis for his hand and wrist problems prior to

retirement. Further, the Commission relied on an excerpt from Mr. Cordray’s report ostensibly

quoting Dr. Rotman as to what Claimant allegedly told him to bolster its findings when Dr.

Rotman’s report was not entered into evidence and is not contained in the record. The

Commission then mischaracterized the nature of the examination performed in 2011 by Dr.

Rotman, the employer’s examining physician, to state that Claimant sought additional treatment

for carpal tunnel syndrome two years after he retired. Consequently, the Commission’s reliance

on an excerpt from a document outside the record cannot be credited to support a finding that

 15
Claimant “indicated to Dr. Rotman his retirement was not induced by symptoms of carpal tunnel

syndrome.”

 The Fund, however, characterizes the essential issue in this case as a question of

credibility leading to Claimant’s failure to meet his burden of persuasion. The Fund cites Guinn

v. Treasurer of Missouri, 600 S.W.3d 874 (Mo. App. S.D. 2020), Anttila v. Treasurer of

Missouri, No. SD36826, 2021 WL 4236974 (Mo. App. S.D. Sept. 17, 2021), and Annayeva v.

Special Administrative Board of the Transitional School District of St. Louis, 597 S.W.3d 196, to

support its contention. All three cases are readily distinguishable from the present case. None of

the three cases involve an ALJ or the Commission disregarding uncontradicted and unimpeached

medical evidence and substituting their own opinion of medical causation.

 Guinn and Anttila involved conflicting expert medical opinions regarding the cause of the

claimant’s permanent and total disability, and the Commission believed the opposing expert over

the claimant’s expert. Guinn, 600 S.W.3d at 877-78; Anttila, 2021 WL 4236974, at *2. Such is

not the case here. As the Southern District stated, “[t]his was a battle of experts.” Id. at *7.

Unlike the present case, Annayeva hinged on the claimant’s credibility, and the Commission

identified evidence in the record—such as the claimant’s inconsistent testimony and her initial

accident report—to support its explicit finding that the claimant’s explanation of the cause of her

fall was not credible. 597 S.W.3d at 200 n.8.

 Generally, we defer to the Commission on issues involving the credibility of witnesses

and the weight given to testimony, and we acknowledge the Commission may decide a case upon

its disbelief of uncontradicted and unimpeached testimony. Abt v. Mississippi Lime Co., 388

S.W.3d 571, 578 (Mo. App. E.D. 2012); see also, Annayeva, 597 S.W.3d at 200 n.8 (stating once

expressed by the Commission, credibility determinations are binding on this Court).

 16
Nevertheless, “where the record reveals no conflict in the evidence or impeachment of any

witness, the reviewing court may find the award was not based upon disbelief of the testimony of

the witnesses.” Abt, 388 S.W.3d at 578 (quoting Corp v. Joplin Cement Co., 337 S.W.2d 252,

258 (Mo. banc 1960)). The Commission may not arbitrarily disregard and ignore competent,

substantial, and undisputed evidence of witnesses who are not shown by the record to have been

impeached. Id. Likewise, the Commission may not base its findings upon conjecture or its mere

personal opinion unsupported by sufficient competent evidence. Id.

 Here, there were no conflicting medical opinions in the record for the Commission to

weigh. The parties stipulated Claimant suffered an occupational disease and had preexisting

disabilities. It was undisputed that Claimant settled with the employer for 20% disability of each

wrist with a 10% loading factor. The only issue before the ALJ was Fund liability. The ALJ

implicitly found Claimant permanently and totally disabled, did not expressly find Dr. Woiteshek

or Claimant not credible, and offered no reasonable basis for finding evidence of causation not

credible. Thus, the Commission could not reasonably have made its findings and reached its

result based on all the evidence in the record. The totality of the evidence in the record supports a

finding of permanent and total disability due to a combination of Claimant’s carpal tunnel

syndrome and his preexisting conditions. Because we find the Commission arbitrarily

disregarded and ignored the substantial and undisputed evidence offered by Claimant, its denial

of his claim against the Fund is in error. Hazeltine, 591 S.W.3d at 65.

 Conclusion

 The Commission arbitrarily ignored the substantial, uncontradicted, and unimpeached

evidence, including the only qualified expert medical opinion in the record, without explanation

or a reasonable basis for finding the witnesses not credible. The Commission then substituted its

 17
own theory of the medical cause of Claimant’s permanent total disability. As a result, the

Commission’s decision contrary to the only expert medical opinion in the record is not supported

by sufficient competent evidence and is against the overwhelming weight of the evidence.

 On appeal, we review decisions by the Commission to ensure they are supported by

competent and substantial evidence. Mo. Const. art. V, sec. 18; White, 535 S.W.3d at 338.

Viewing the award objectively and examining the evidence in the whole record, we conclude

Claimant met his burden of establishing, under section 287.220 RSMo. (2000), that he is

permanently and totally disabled due to a combination of his preexisting permanent disabilities

and his primary injury. We find the Fund is liable for the Claimant’s permanent and total

disability.

 We reverse the Commission’s decision that the Fund is not liable for Claimant’s

permanent and total disability, and we remand with instructions for the Commission to enter an

award consistent with the findings in this opinion.

 __________________________________
 Angela T. Quigless, J.

Philip M. Hess, P.J. and
Colleen Dolan, J., concur.

 18